STEPHENS v. CLAYTON (two cases).—124 S. W. (2d) 33.

Middle Section. June 2, 1938.

Petition for Certiorari Denied by Supreme Court, January 21, 1939.

450

W. P. Cooper and Cate & Cate, all of Nashville, for plaintiff in error Stephens.

Walker & Hooker, of Nashville, for defendants in error Clayton.

CROWNOVER, J.  Creason Clayton, a minor of the age of seven

years, was run over, in the driveway in the grounds of his father's home, by a truck belonging to the defendant Stephens and driven by his servant into the grounds to deliver groceries.

He instituted his suit, by next friend, against J. R. Stephens to recover damages for the injuries sustained. His father, E. M. Clayton, sued to recover for loss of his services and for medical expenses and doctors' and hospital bills.

The defendant pleaded the general issue of not guilty in each case.

The two cases were tried together by the judge and a jury, by consent.

While the jury was being selected and during the qualification of the jury, the following question was asked said jurors by counsel for the plaintiffs:

"Is there any member of the jury as you are now constituted, who now or at any time in the past has engaged, or rather particularly now, in writing any kind of automobile insurance or fire or collision or theft, or that have any relatives engaged in that business?"

Thereupon counsel for the defendant moved the court for a mistrial on the ground that such question created an inference that an insurance company was interested in the defense of this case.

The motion was overruled, to which the defendant excepted.

At the conclusion of the evidence the defendant moved the court for peremptory instructions in his favor, which motion was overruled, to which the defendant excepted.

The jury returned a verdict of $4000 in favor of Creason Clayton and a verdict of $2000 in favor of E. M. Clayton, and judgments were entered accordingly.

The defendant filed a motion for a new trial, which was overruled, and he appealed in error to this court and has assigned errors, which are, in substance, as follows:

(1) The court erred in failing to declare a mistrial, on the motion of the defendant, because the plaintiffs' attorney during the examination of the jurors on their voir dire asked the question above set out.

(2) The court erred in failing and refusing to grant the motion of the defendant for a mistrial because of remarks made by the plaintiffs' attorney in making objection to questions propounded to the plaintiffs' witness, Eskew Wood, on cross-examination, to-wit:

"I except to this, for a lawyer to ask him a question from a record and attempt to smuggle it across on the witness."

(3) There is no evidence to sustain the verdicts, and the court erred in refusing to grant the defendant's motion for peremptory instructions in his favor.

(4) The court erred in refusing to charge the defendant's special requests to the effect that if the jury found that the driveway was

a dangerous place and that the father of the child knew or should have known that it was dangerous and permitted his child to play there, and that such act of his contributed to his child's injury, there could be no recovery. Or, if such negligence remotely contributed to the injury, the fact should be taken in mitigation of the damages recoverable by the parent.

(5) The court erred in overruling the defendant's exception to the evidence of the plaintiffs' witnesses, Mrs. E. M. Clayton, Mrs. W. O. Faught and Mrs. Julian Thomas, in which they described the boy's injuries and suffering.

(6) The verdicts are excessive.

The plaintiff was a boy seven years of age. He was run down on the driveway of his father's home, at the side entrance to the house, and about ten feet from the house, by a truck in which groceries were being delivered.

At the home of E. M. Clayton, the father of the boy, the driveway leads from the street through the grounds and passes the side porch of the house. The side porch and side entrance are on the left side of the driveway. On the right side of the driveway and immediately opposite the porch is the garage with servants' quarters over it. A roof extends from the porch to the garage, forming a porte cochere. The space between the steps of the porch and the door of the garage is about thirteen feet wide.

J. R. Stephens was engaged in the grocery business under the name of Stephens Quality Market. E. M. Clayton had been purchasing groceries from him for five or six years. David Lee Stephens was employed by J. R. Stephens to deliver groceries; he had been delivering groceries by truck to E. M. Clayton's home for about five years. He knew that the Claytons had two little boys, one of seven and one of about twelve years of age; that they frequently played on the side porch of the residence and in the garage, and often crossed the driveway between the porch and the garage, and played under this roof forming the porte cochere.

At about one o'clock in the afternoon, on Saturday, July 13, 1935, the two boys were playing in the garage with a colored man, the husband of the cook, and who worked on the yards on Monday and Friday of each week. Creason Clayton, the younger boy, started to go into the house. As he was crossing the driveway he was struck by the defendant's truck.

As the boy started to the house, the negro, Eskew Wood, started up the staircase from the garage to the servants' quarters above. When he had reached about the third step he was in line with the side window of the garage; he heard the boy cry out and looked out of the window and saw the Stephens truck coming up the driveway.

Wood testified that when he first saw the truck it was about sixty

feet from the garage, approaching rapidly; that as he turned he saw it flash by the door; that when he reached the garage door the little boy was in the middle of the driveway, crawling towards the house, and the truck had come to a stop about fifty or sixty feet beyond the garage.

Everett Clayton, Jr., was twelve years of age at the time of the accident and thirteen at the time of the trial. He testified that he was in the garage playing with his brother; that he saw him leave the garage door and take about two steps in the driveway and then start back, when his view of him was obstructed by the garage wall; that he heard him cry out and saw something black go by the door and heard the brakes screaming; that when he reached the driveway Creason was in the middle of it crawling, and the truck had come to a stop further down the driveway.

Creason Clayton, the little plaintiff, testified that he had gone about three feet into the driveway when he saw the truck approaching at a rapid rate; that he tried to run back and the truck struck his foot and dragged him.

There were skid marks on the driveway beginning about fifteen feet away from the garage and extending up to it.

David Lee Stephens, the truck driver, a man of the age of twenty-five years, testified that he drove up the driveway at the rate of about ten miles an hour; that as he reached this space between the garage and the porch the boy jumped out of the door of the garage right in front of the truck and was struck by the front wheel; that the front wheel passed over the boy's foot, and he stopped the truck.

The driver did not testify that he sounded his horn or made known his approach.

1. The defendant's first assignment of error complains of the question asked the jury in the course of the examination of the venire on their voir dire, which question is above set out.

On the defendant's motion for a mistrial, the plaintiff's counsel made the following statement:

"Now may it please the Court, I want to make this statement, and I will make it under oath, I want this in the record. At the last term of this court and at previous terms of this Court, there have been men upon juries who were engaged in writing liability insurance. At the time this jury as was then constituted, was asked the question objected to, we didn't know but very few of the jurors, and what they did, and that question was asked for that purpose, and the statement here made by Mr. Cate that that was done for the purpose of getting before the jury the fact that the defendant had insurance, is absolutely and unequivocally untrue."

On the hearing of the motion for a new trial counsel for the plaintiffs testified that this question was asked in good faith; that he knew

that the firm of lawyers which was representing the defendant Stephens in this case was retained by a liability insurance company, which suggested that Stephens had liability insurance covering the truck, so he considered it necessary to find out whether any members of the jury had any interest in the insurance business; that there were several new jurors on this jury that he did not know and about whose business connections he had no information; and that this question was asked for the purpose of ascertaining the qualifications of the jurors, and not for the purpose of informing them that the defendant had liability insurance.

The defendant introduced no evidence to show that he was not protected by insurance.

In a recent opinion in the case of Frank L. Lynch v. Joe Davis, Franklin County Law (opinion filed at Nashville on May 14, 1938, unreported), this identical question was raised, and Presiding Judge Faw discussed the question at length and held that the attorneys were entitled to make such inquiries, if made in good faith. Citing Luchessi v. Barnard, 7 Tenn. App., 353.

This assignment is therefore overruled.

2. We are of the opinion that the remark made by the plaintiffs' counsel during the cross-examination of the negro yardboy, above set out, had no effect on the verdicts. We think the jury understood that it was a row between lawyers and their verdict was not influenced by it. A question similar to this was passed upon by our Supreme Court in the case of Robt. C. Lassiter, Sr., v. Thos. F. Squires et al., Davidson Law, 1934 (unreported), and that Court held that the remarks did not affect the verdict.

3. The averments of the boy's declaration are that the defendant's truck driver was guilty of negligence (1) in failing to keep a proper lookout ahead; (2) in operating the truck at a fast and dangerous rate of speed; (3) in not having the truck under control when he knew that children were likely to be in the yard; (4) in driving at such a rate of speed that he could not stop the truck when he knew or should have known that children were likely to cross from the garage to the residence at any time.

If the evidence for the plaintiff, Creason Clayton, is true, the defendant's driver was not keeping a lookout ahead and was driving in a private driveway across a passageway between the house and the garage at a rapid rate of speed and without having his truck under control so that he could stop.

The child was where he had a right to be, and it was the driver's duty to use the precautions which the circumstances required to inform him of the approach of the truck.

The driver contends that the child jumped from the door of the garage in front of his truck and he was unable to stop before

striking him, but the jury evidently believed the evidence for the plaintiff. As above shown, there was material evidence to support the verdict of the jury, hence the court correctly overruled the defendant's motion for a directed verdict, and the defendant's third assignment of error is overruled.

4. The defendant's fourth assignment is that the trial judge erred in refusing to charge his special requests on contributory negligence of the child's father in creating a dangerous situation by placing the driveway between the side entrance to the house and the entrance to the garage and in permitting the child to play in this passageway over which a vehicle using the driveway must pass.

■■ The judge correctly refused these requests. This was a private driveway through private grounds. The truck driver was an invitee (Berry on Automobiles (7 Ed.), sec. 4.255; 45 C. J., 808 to 810), and owed the duty to exercise ordinary care, commensurate with the danger, and to use the precautions which the circumstances required to inform the child of his approach. 6 Blashfield on Automobiles, Permanent Ed., secs. 3361-3364; 1 Berry on Automobiles (6 Ed.), 452, sec. 546; Oliver v. Abrigo, 158 Ark., 643, 241 S. W., 893. He was required to use this care regardless of the age of the plaintiff. 1 Berry on Automobiles (6 Ed.), 452, sec. 546.

"A motorist going on school premises for a proper purpose must exercise ordinary care to avoid injury to pupils." 6 Blashfield on Automobiles, Permanent Ed., sec. 3363.

"The driver of an automobile, in crossing public playgrounds of which he has knowledge and knowing that children are playing thereon, must exercise reasonable care to avoid injuring them and keep a lookout ahead." 6 Blashfield on Automobiles, Permanent Ed., sec. 3364.

The defendant's evidence was that the accident was unavoidable, and that the child jumped in front of the truck.

But the jury accepted the plaintiffs' version of the accident, as hereinabove detailed. Under this evidence the child was not negligent, and there was no contributory negligence on the part of his father. Walkup v. Covington, 18 Tenn. App., 117, 124, 125, 73 S. W. (2d), 718.

■■ 5. The plaintiff had a right to prove his injuries and suffering. The testimony of his mother, Mrs. E. M. Clayton, Mrs. Faught, who saw him and saw his foot before it was dressed, and stayed at the hospital until his mother reached the city; and of Mrs. Thomas, who assisted Mrs. Faught in looking after the little boy— was admissible evidence. Physical condition may be proved by lay witnesses where they detail facts. Louisville & N. R. Co. v. Hadley, 11 Tenn. App., 642, 648; 22 C. J., 618, sec. 710.

6. The verdicts are not excessive.

The wheel of the truck caught the boy's right foot and dragged him on the driveway which was covered with crushed rock. The flesh, tendons, veins and bloodvessels and nerves of the top of his foot were ground off down to the bones. After the foot was dressed it was necessary to irrigate it every two hours with Dakin's solution, which burns and is very painful. His suffering was intense for about two months. He was in the hospital a month, and in bed at home a month, and on crutches for several weeks. The tendons of all the toes except the great toe were destroyed, and about three-fourths of the ligaments in the ankle joint were torn away. As the result he cannot lift his foot normally, and the doctor testified that his foot will become worse with the years, that he will have the same type of deformity as a club foot. The injuries to the blood vessels cause a low grade circulation in this foot. Since this injury one toe became infected, which has not healed on account of the poor circulation.

It was necessary to graft skin on the foot, and about fifty pieces of skin were taken from other parts of his body and placed on his foot.

Other operations on this foot may be necessary.

The verdict of $2000 in favor of E. M. Clayton is just about the amount he has expended as the result of the accident. The doctor's bill was $1250, and the hospital, nurses and drug bills amounted to about $700.

Hence, the verdicts are not excessive, and the assignments are overruled.

All the assignments of errors having been overruled the judgments of the lower court are affirmed. A judgment for $2000 with interest thereon from November 5, 1936, to the present, together with the costs that accrued in the lower court, will be entered in this court in favor of E. M. Clayton and against J. R. Stephens; and a judgment for $4000 with interest thereon from November 5, 1936, to the present, together with the costs that accrued in the lower court, will be entered in this court in favor of Creason Clayton and against J. R. Stephens. The costs of the appeal are adjudged against J. R. Stephens and the surety on his appeal bond.

Faw, P. J., and Felts, J., concur.