ARMSTRONG CONSTRUCTION COMPANY, INC. *v.* JOE SAMS.

(*Knoxville,* September Term, 1953.)

Opinion filed July 23, 1954.

Petition for Rehearing denied September 6, 1954.

MINTER McLELLAN & TIPTON, of Kingsport, for appellant.

PRESTON H. TAYLOR, of Kingsport, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a workmen's compensation case in which the only question for the Court's consideration is as to the extent of the injury suffered by the employee.

The case had its origin in the Chancery Court, Armstrong Construction Company filing its original bill alleging that the defendant, Sams, had suffered an injury arising out of and in the course of his employment; that it paid him compensation for a period of six (6) weeks, at the expiration of which time Sams was able to return to work, and that he had failed to return to his job. It is further alleged that defendant takes the position that he is unable to return to work and is entitled to further compensation; that this creates a dispute requiring adjudication by a court of competent jurisdiction under Tennessee Code 6885.

The defendant filed an answer and cross-bill, in which he alleged the nature and extent of his injury to his back and spine. The cross action claims that he has suffered an injury that is total and permanent and that he should be paid compensation accordingly.

We will refer to the parties as if Joe Sams, the employee, had sued the Armstrong Construction Company in a court of law, Sams as plaintiff and his employer as the defendant.

The plaintiff, Sams, was a day laborer for the defendant and when injured was lifting some broken pieces of concrete which weighed approximately one hundred (100) pounds. He felt a sharp jerk in his back, causing pain to

run from his back down to his hips and legs, and that "he could not bend, nor could he hardly walk." Contention is further made that his back and legs were injured and he was advised that he suffered a ruptured disc. He earned $1.20 an hour, or approximately $48.00 a week. The defendant has made the contention from the beginning, and now insists that the plaintiff has not suffered any total and permanent injury. The Chancellor found the issues in favor of the plaintiff, and made an award of $25 a week for three hundred (300) weeks. From this decree the Armstrong Construction Company has appealed and assigned errors.

The first three assignments involve purely issues of fact; "that there is no evidence to support the judgment". (4) It was error for the court to ask the plaintiff, over objection, "Are you totally and permanently disabled?" This amounted to having the plaintiff decide the law suit himself. (5) It was error for the court to permit Dr. John Munal to give a history of the case since Dr. Munal admittedly was not the family physician of Sams. (6) It was error for the court to permit Mrs. Sams and Mrs. Ollie Johnson to testify as to Sams' condition, their testimony being "hearsay and self-serving" and because the rule had been called for. Mrs. Johnson testified that "Mr. Sams could not sit up in bed"; while Mrs. Sams stated that her husband said, "It hurt right back there." (7) It was error to permit Charles Hunley to testify, the rule being called for; also it was not proper for him to testify as a character witness. (8) It was error for the court to advise Dr. Keener not to answer the following question by defendant's counsel, "Dr. Keener, haven't you told me on more than one occasion you always gave the man considerably more disability than you thought he had so that you would make sure he

got enough?'' (9) "It was error for the Court to conclude, and unreasonably so, that Sams was totally and permanently disabled, upon the testimony of two ordinary practitioners and the statement of Sams' family, the latter of which could only be self-serving, against the testimony of one ordinary practitioner and an orthopedic surgeon—*the only man really qualified to make a diagnosis in the case.*" (Italics ours). (10) It was error for the court to approve a decree for three hundred (300) weeks, less the six (6) weeks prior payments of compensation.

All of the errors assigned, severally and collectively, make the single contention that it was error for the Chancellor to find that Sams was totally and permanently disabled.

■■ There is no merit in Assignment (4). While the answer called for a conclusion, there is nothing in the record to show that it was a controlling factor in the court's decision. Assignment (5) complaining that Dr. Munal's recitation of the plaintiff's case history was incompetent has no merit. There is no prejudice to the defendant resulting from it.

■ Assignment (6) complaining of certain specific statements of Mrs. Sams and Mrs. Johnson as being "hearsay and self-serving" is highly technical and argumentative. The quoted statement of Mrs. Sams, standing alone, doesn't mean anything, while that of Mrs. Johnson that Sams "could not sit up in bed" is only part of her statement as to what she saw generally. Sams lived in the same house with Mrs. Johnson. She assisted in giving medicines, "and everything I think would ease him when he complained of his back." The opinion of the witness was technically inadmissible, but it was a harmless error.

■ Contention is made in Assignment (7) that Hunley, and possibly one other witness, were permitted to testify as character witnesses when the rule had been called for. The assignment is overruled. There is no prejudice shown, and it was a matter entirely within the Chancellor's discretion. It was not improper for them to testify as to Sams' character for truth, since defendant had suggested that he was a malingerer and was otherwise exaggerating his disability.

■ There is no merit in Assignment (8). The question itself was not in proper form as laying a ground for impeaching the witness, in that no time or place was stated as to when the statement is said to have been made. Moreover the record shows that counsel for the defendant admitted later that Dr. Keener's reputation was good. The Chancellor also stated, "He has done an excellent job, and the court has been impressed with his honesty and medical knowledge."

■ Assignment (9) makes the contention that the court erroneously decided the determinative issue upon the testimony of Sams and his family "which could only be self-serving" and two medical experts "who were not qualified to make a diagnosis of the case". The sole contention of the defendant's counsel is that only Dr. Shobe, who testified for the defendant and admittedly was an experienced orthopedic surgeon, was qualified to testify as to the cause of Sams' disability.

Counsel refer the Court to a number of our decisions dealing with the question of a medical expert's opinion and its value as determining the cause of an injury as well as its extent, such as *Cumberland Tel. & Tel. Co.* v. *Peacher Mill Co.*, 129 Tenn. 374, 164 S. W. 1145, L. R. A. 1915A, 1045; *Sanders* v. *Blue Ridge Glass Corp.*, 161 Tenn. 535, 33 S. W. 2d 84; and *Lee v. Aluminum Co.*,

184 Tenn. 287, 198 S. W. 2d 639. In these cases the Court follows the general rule that where the cause of an injury is in dispute an expert's opinion may be admitted that the effect of a certain cause could or might produce the condition, but is not permitted to testify as to what in his opinion was the real and producing cause—as this would invade the province of the jury. We think the courts have given medical experts a good deal of latitude in expressing their opinion as to causes of injuries. Such experts, men of great learning, are an invaluable aid to the court in an effort to arrive at the truth in any given case. But in no case have we gone so far as to hold that an expert's opinion is determinative of the issue.

The counsel for defendant makes the extravagant statement, to which we cannot assent, that Sams' testimony and that of his family should be ignored because it is "self-serving". If this is sound as a matter of law then no injured employee, or any of his family, should be permitted to testify at all.

Adverting to the issue as to the qualification of a medical man to give expert testimony, there is no doubt as to the qualifications of Dr. Shobe and Dr. Tipton, witnesses for the defendant. Dr. Shobe was very positive that the plaintiff had not suffered a total and permanent injury. Dr. Tipton testified substantially to the same effect. Dr. Munal and Dr. Keener testified to the contrary. There was no objection at any time to their competency to testify as medical experts. Dr. Munal had practiced his profession in Kingsport for twenty-two (22) years. He made more than one examination of plaintiff Sams. He expressed the opinion, without objection, that the plaintiff had a "ruptured disc (vertebra) on the right side of the lumbar area."

"Q. Doctor, is this man now able to work? A. I don't think so.

"Q. Well, will he ever be able to work? Is this disability permanent? A. This disability is usually permanent, and it stays permanent until that pressure from the disc is removed from that nerve.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Is that, Doctor, a major operation? A. Yes, sir.

"Q. Is it a dangerous operation? A. Yes, sir."

The second medical witness for the defendant was Dr. G. G. Keener. He had practiced medicine in Kingsport, Tennessee for forty-four (44) years, after his graduation from the University of Tennessee Medical School. He testified without any objection to his qualifications as an expert. When asked as to his diagnosis said: "Well, his back was sore and tender on pressure, and my diagnosis is that he is suffering from a ruptured disc on the right side of the lumbar area." "Pain was running down his leg." "The reflexes was absent in his right leg." "He is not able to do any type of labor or construction work." On cross-examination he thought he could do "light work", but did not explain what he meant by "light work".

The Chancellor's opinion, which appears in the record at page 20 discusses the testimony of *all witnesses*. He concludes with the following statement:

"The Court finds from all of the evidence that it is true that the cross-complainant was injured while working in the course of his employment, and that said injury is permanent, and that according to the clear preponderance of the evidence, that the cross-complainant is suffering with great pain, and that he is not able in his present condition to perform any

kind of work. From the record as a whole, the Court concludes that the cross-complainant, Joe Sams, is now totally and permanently disabled and is entitled to a judgment for a total and permanent disability as set out in Section 6878 of the Code of Tennessee, * * *,,

We think the testimony of lay witnesses and medical experts fully supports the opinion and decree of the Chancellor. The assignments of error are accordingly overruled and the decree is affirmed. The case is remanded to the Chancery Court for enforcement of the decree.

## On Petition to Rehear.

Plaintiff in error has filed a petition to rehear complaining that the Court failed to pass upon the real question involved, to wit, "could or might the condition complained of by Sams be connected with any accidental injury." It is also insisted that it is not answered by the testimony.

The original opinion fully discussed the testimony of witnesses both for the plaintiff in error and the defendant as bearing upon the "real question" as to whether the accident resulted in, or caused, a permanent injury to Sams. The Court was of the opinion that the evidence supported the finding of the Chancellor, or at least there was material evidence to support his decree. The so-called "could or might rule" involves the probative value of evidence as to "causation". We not only directed attention to the testimony of lay witnesses but also to the opinions of medical experts. There was direct evidence to support the Chancellor's decree. Moreover the value of the testimony of medical experts was not based solely upon any opinion that the accident "might or could

have'' caused a permanent injury. Thus on page 564 of 270 S. W. (2d) there appear excerpts from the testimony of Dr. Munal that as a result of the accident Sams would not recover without a major operation and that such an operation ''was dangerous''. If we concede that this was opinion evidence it surely was based upon facts which the doctor found to exist, i. e. ''a ruptured disc on the right side of the lumbar area.'' The petitioner introduced no testimony suggesting that this ''ruptured disc'' resulted, or could have resulted, from any cause other than the accident complained of.

The contention of counsel is highly technical and requires no response except to say that the original opinion is not subject to the criticism appearing in the petition. The petition to rehear is denied.