HAMLIN & ALLMAN IRON WORKS

*v.*

OSCAR JONES, JR.

(*Knoxville*, September Term, 1955)

(May Session, 1956)

Opinion filed June 8, 1956.

S. J. MILLIGAN, Greeneville, for appellant.

JOHN A. ARMSTRONG, Greeneville, for appellee.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a workmen's compensation case in which the court found in favor of the petitioner, and the employer has appealed. The only question is whether or not there is any material evidence to support the judgment of the trial court.

The employee was a welder and on June 13, 1955, he sustained a compensable injury arising out of and in the course of his employment, said injury being caused by his effort to support one end of a compressor machine weighing about 250 pounds, the weight of which had acci-

dently been shifted onto him alone. The machine slipped down and struck him in the lower part of the back and around the hips. The employer paid compensation until August 1, 1955, and then discontinued payments on the theory that the employee had entirely recovered from his injury.

The petitioner and his wife testified in his behalf while two doctors testified for the employer, one being Doctor Bottomley who was the physician furnished him immediately after the accident and Doctor Sherrod who examined him at the instance of the employer on September 29, 1955.

Both physicians testified that the employee had fully recovered and that they could find nothing wrong with him that would keep him from being able to work. On the other hand, the employee, who was 29 years old, testified that prior to this accident he was in good health but that immediately after the accident he had to go to the Laughlin Clinic where traction was applied and he remained for 16 days during which time he was treated by Doctor Bottomley. After he was discharged he wore a brace most of the time which had been prescribed for him by the doctor. After he was released from the hospital he did not work for a long time but he tried to and was unable to do so. He was unable to work at any gainful occupation he was qualified to do. If he attempted to work at his usual occupation of welder he had to bend over and crawl under pipes, etc., which would cause him to get sore and stiff and he could not sleep at night. He was also a pipe-fitter but he could not do this work due to the fact that it involved heavy lifting. He attempted to work for his employer, but after a few days he found that he was unable to do the work. He went to Atlanta, Geor-

gia, where he tried to work in two places. On one of them he worked about three weeks where he would work two days a week and on the other he worked about a month where he would work three days a week. He had to give up both jobs, however, because he was unable to do the work although he needed the money. He undertook to find easier work in Atlanta, but was unable to find any. He testified that his percentage of disability was 75 per cent.

His wife testified that she went to Atlanta with him and that he absolutely could not do the work, that when he would come in at night, she had to be up practically all night with him giving him things to ease the pain in his back because he couldn't sleep.

Doctor Bottomley did not see the employee after September 5, 1955, and on that date when he saw him he assumed that the patient had recovered because he did not have on the brace which had been prescribed. The doctor stated, however, that prior to September 5th the patient had called him on numerous occasions, day and night, asking for sedatives to ease the pain in his back, and that he was complaining of pain the last time he saw him.

Doctor Sherrod testified that although he did not have the patient lift any weights, he had him go through the different movements of the limbs and trunk and while he could find nothing wrong, he stated that the patient did complain of pain during the extension of the lumbar spine.

When the court allowed the employee to testify that his disability was 75 per cent the employer objected to the evidence as being incompetent and preserved its exception and now raises the question. Counsel states the

question as to whether or not a petitioner is to be permitted without any corroborating testimony, medical or otherwise, to evaluate his alleged disability, notwithstanding medical evidence to the contrary. No authority is cited on the point.

 It has long been the rule in this State that a lay witness may testify to his own physical condition or that of another person provided that the witness first states the detailed facts and then gives his opinion or conclusion. *Norton v. Moore*, 40 Tenn. 480; *Stephens v. Clayton*, 22 Tenn. App. 449, 124 S.W.2d 33.

The rule is stated in 32 C.J.S., Evidence, sec. 513, p. 191, in which other Tennessee cases are cited. It is there said:

"While a nonexpert or lay witness may not testify as an expert and give expert testimony as to the character or extent of a personal injury which he has sustained, or as to the effect of the injury, a witness may state simple inferences drawn by him from his own conscious subjective sensations as to his physical condition, and, according to some cases, may state his notion or feeling as to the character or extent of an injury and the personal results he has experienced therefrom. So it has been held or recognized that it is permissible for a witness to state his physical symptoms; the pain which he suffered after an injury; how he suffered, and the extent of his suffering, by reason of a personal injury; the effect of injuries on his health or physical condition, or of sickness or injuries on his ability to work or on his earning capacity; * * *."

The same rule subsists with reference to lay witnesses testifying to the mental condition of another person.

*Hammond v. Union Planters Nat'l Bank,* 189 Tenn. 93, 222 S.W.2d 377. On page 105 of 189 Tenn., on page 382 of 222 S.W.2d the Court said:

"Lay witnesses may express an opinion as to the insanity of the testator based upon 'facts and acts' which show a mental condition, as was done in the instant case, but their conclusion from these facts does not necessarily create an issue or prevent the Court from finding the true condition as a matter of law", citing cases.

In other words, the court will evaluate the testimony of a lay witness with reference to whether such witness has stated any material facts that justify the witness' conclusion to which he testifies.

In the instant case, therefore, we think the claimant having described his physical condition somewhat in detail could then make his own estimate as to the extent of his disability, subject, however, to the right and duty of the court to give such testimony whatever weight and value might be deemed proper. That is exactly what the court did because the court found that the claimant's disability was 50 per cent.

The question of corroboration and the adverse testimony of the doctors therefore goes not to the admissibility but only to the weight of the evidence.

In *Armstrong Construction Co. v. Sams,* 197 Tenn. 208, 214, 270 S.W.2d 561, 563, this Court said:

(1) That in no case have we gone so far as to hold that an expert's opinion is determinative of an issue, and (2) With reference to the testimony of the petitioner and his family being self serving and thus to be ignored, that "if this is sound as a matter of law

then no injured employee, or any of his family, should be permitted to testify at all."

The assignments are overruled, and the judgment of the lower court is affirmed.