ARROWHEAD, INC. and HARTFORD ACCIDENT & INDEMNITY
COMPANY, Plaintiffs in Error,

*v.*

LLOYD GAMMONS, Defendant in Error.

412 S.W.2d 214.

(*Jackson*, April Term, 1966.)

Opinion filed February 10, 1967.

ELAM & GLASGOW, Union City, for plaintiffs in error.

MILES & MILES, Union City, for defendant in error.

MR. SPECIAL JUSTICE WILLIAM J. HARBISON delivered the opinion of the Court.

This is a suit for workmen's compensation benefits. The parties will be referred to herein as they appeared in the trial court, that is, Lloyd Gammons as petitioner, and Arrowhead, Inc., and Hartford Accident & Indemnity Company as defendants.

On and prior to November 16, 1964, petitioner had been employed by Arrowhead, Inc. at its feed mill in Obion County. Petitioner is thirty-seven years of age and has a limited education, having completed not more than the third grade in elementary school. He had performed hard labor since he was a young man, having worked on a farm for a number of years, and for some five years prior to November 16, 1964, had been employed by Arrowhead, Inc., where he performed heavy manual labor.

It is undisputed in the record that on November 16, 1964, petitioner did sustain an accidental injury in the scope and course of his employment, and that this injury was compensable under the Tennessee Workmen's Compensation Law. The employer and its insurance carrier have paid substantial benefits to petitioner for medical and hospital expenses and for temporary total disability resulting from this injury. The only questions now presented are the extent and degree of permanent disability and the claim that petitioner refused a tender of suitable employment by Arrowhead.

There seems to be no question but that as a result of the incident which occurred on November 16, 1964, peti-

tioner sustained a ruptured intervertebral disc. This resulted from his lifting or handling a heavy sack of feed. He was treated by a physician in Union City, Tennessee, and was hospitalized there for some nine days. Thereafter, he was sent to Memphis, Tennessee, where he was placed under the care of an orthopedic specialist. This physician, Dr. Francis Murphey, performed surgery upon petitioner's back on April 6, 1965. He remained in the hospital in Memphis until April 15, 1965, and thereafter recuperated at home for some time following the surgery.

On two occasions following the surgery petitioner attempted to return to work at Arrowhead. The exact dates of these occasions are not clear in the record. There is testimony, however, that on one occasion petitioner returned to work for some three days, painting the walls and ceiling in the main office building, moving furniture and equipment, et cetera. The employer testified that petitioner's work on this occasion was satisfactory. On another occasion he worked for one day and part of the second day, but petitioner testified that he had constant pain in his left leg and that he was unable to do this work. On the second day following his return on this occasion he left work after about two hours, and he has never undertaken to return to work for Arrowhead since that time. The testimony places this occasion at some time during May, 1965.

Petitioner himself testified that he had severe pain and discomfort in his back and leg practically all of the time, and that any type of prolonged activity causes extreme discomfort. He considered himself to be totally disabled, and in his petition he claimed total permanent disability.

A letter from Dr. Murphey was read into evidence by stipulation of counsel and Dr. Murphey estimated that as a result of the injury and subsequent surgery, petitioner would sustain approximately fifteen per cent permanent partial disability. This diagnosis was a clinical report only, and did not necessarily take into consideration petitioner's lack of education, and the fact that he is equipped by training and education only for the performance of heavy manual labor.

The officials of the employer and other witnesses testified that after his surgery petitioner was seen to perform various activities around his home and community, and there was conflicting lay testimony concerning the degree and extent of his disability. After a full hearing, the trial judge found that petitioner had sustained permanent partial disability to the extent of seventy-five per cent of the body as a whole, and judgment was awarded accordingly. Upon motion for a new trial filed by the employer and its insurer, however, the trial judge found that this award was excessive and he reduced the award to fifty-five per cent permanent partial disability. The defendants have appealed, and insist that there was no evidence to support the judgment, that the judgment was excessive, and that the trial judge failed to rule upon the reasonableness of the "refusal" of petitioner to accept employment tendered to him by his employer.

■■ The first two assignments of error are without merit and are overruled. There is ample evidence in the record to sustain the finding made by the trial judge as to the degree and extent of permanent partial disability, and we are unable to say that the award made was excessive. Where there is material evidence to support the trial judge in his findings as to the percentage of permanent

partial disability, this Court is bound by such findings. *Fidelity & Casualty Co. of New York v. Treadwell,* 212 Tenn. 1, 367 S.W.2d 470 (1963); *Hamlin & Allman Iron Works v. Jones,* 200 Tenn. 242, 292 S.W.2d 27 (1956); *Armstrong Construction Co. v. Sams,* 197 Tenn. 208, 270 S.W.2d 561 (1954).

The remaining question presented in this case relates to the third assignment of error. This is to the effect that the employer was willing to and offered to afford petitioner employment suitable to his condition, and that the employee refused to accept the same, without reasonable justification or excuse.

An examination of the answer of defendants filed in this case fails to reveal that this issue was raised as a defense in the pleadings. The answer filed on behalf of defendants on February 17, 1966, conceded that petitioner was entitled to permanent partial disability benefits based upon fifteen per cent of the body as a whole as found by Dr. Murphey. It denied that petitioner was entitled to workmen's compensation benefits in excess of that rating, and renewed a previous offer made by defendants to pay benefits to petitioner upon that basis. There was no allegation that suitable employment had been tendered to petitioner and refused by him at any time, so as to suspend his right to receive compensation as provided by T.C.A. sec. 50-1007 (c).

At the trial of the case, however, Mr. J. B. Stricklin, who owns and operates Arrowhead, Inc., testified that he considered the petitioner a good employee, and testified that he felt that the only way petitioner could ever get well would be to go back to work and exercise the muscles in his body. He testified: "I would love to have him work

with me today." He further testified that if petitioner did "nothing but to sweep the floor and pick up bags and do light work, I'll pay him what it's worth."

Mr. Stricklin's son, Thomas Stricklin, testified that after surgery was performed on petitioner, petitioner returned to work briefly. He testified that he was under the impression that he should start petitioner out with very light work, and that he tried to be observant so as to prevent petitioner from lifting anything that would be detrimental to his back. He testified that petitioner worked most of one day with little complaint. He said that he told petitioner to go home and rest if he felt tired and, in fact, petitioner did go home and rest for a period of time during the noon hour. He said that petitioner returned to work the next day, which was sometime in May, 1965, and worked for a short time. Thereafter, petitioner left and did not return to work. Mr. Stricklin testified that petitioner had never returned to work for Arrowhead, Inc. since that occasion in May, 1965. Neither he nor his father testified as to having ever made any other tender or offer of employment to petitioner between that time and the date of the trial in February, 1966. There is testimony that the employer did continue to pay petitioner his wages for some period of time after his accident in November, 1964, probably through May, 1965, and the record does reflect that the employer had manifested an interest in the welfare and progress of petitioner.

At the conclusion of the initial hearing, the trial judge commented that he felt that petitioner could do light work, but he did not think that he would ever again be able to do heavy work. The trial judge rejected any inferences which might have been made that petitioner

was exaggerating his injuries or disability, and, as stated, awarded petitioner seventy-five per cent permanent partial disability to the body as a whole.

In their motion for a new trial, the employer and its insurance carrier assigned as error the failure of the trial court to give any effect to the "offer" of the employer to restore petitioner to work "which offer was made in open court during the trial of the case."

The trial judge overruled this assignment of error in the motion for a new trial without comment. As stated, he did reduce the award made from seventy-five per cent to fifty-five per cent disability to the body as a whole, but the record states that he found that the other assignments of error should be overruled.

The employer relies in this Court on a provision of the Tennessee Workmen's Compensation Act, contained in T.C.A. sec. 50-1007(c). This portion of the statute contains scheduled benefits for particular injuries, and then provides for proportionate compensation for partial loss of use of scheduled members. The statute then contains the following statement:

> If an injured employee refuses employment suitable to his capacity, offered to or procured for him, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless at any time in the opinion of the judge or chairman of the county court of the county of his residence such refusal is justifiable.

It would seem that the effect of this section is to suspend compensation benefits for the duration of unjustified refusal of suitable employment by the injured employee. This provision is not in and of itself a bar to

the right of recovery, but simply suspends benefits for the stated period of time. It presupposes an offer of employment suitable to the capacity of the injured employee.

No such tender or offer was raised in the answer of defendants, nor does any seem to have been considered in this case prior to the testimony of Mr. J. B. Stricklin.

■ The trial was conducted on the premise that petitioner had been fully paid his medical expenses and temporary total disability benefits and that the only issue was the proper award for permanent partial disability. Mr. Stricklin did testify that he was willing to give to the petitioner such employment as petitioner might be able to perform and pay him ''what it's worth.'' To say the least, this was a very general and indefinite proposition, made informally during trial, and we are unable to say that it was a sufficient offer of suitable employment to meet the requirements of the statute. We think that the trial judge at least impliedly, if not expressly, either found that the offer was not sufficiently definite, or that the employee was justified in not accepting the same, when the trial judge overruled this assignment of error made in the motion for a new trial. Actually, no one ever asked petitioner about this ''offer,'' and, other than by silence, no ''refusal'' thereof has been shown. Petitioner was recalled to the stand after Mr. Stricklin testified but no one questioned him about the matter at all.

There was testimony in the record by petitioner that he had undertaken to work at various times after his surgery, not only for Arrowhead, Inc., but for others, and that he had been unable to work for any prolonged period of time or to do any work involving any substantial strain

or exertion. This proof was before the trial court, along with other lay proof, concerning the extent and degree of his ability to work.

It is, of course, well settled that where the record shows that the injured employee is qualified only for light work or specialized work, the employer has the burden of showing that such suitable work is available to the employee. *Lunsford v. A. C. Lawrence Leather Co.,* 189 Tenn. 293, 299, 225 S.W.2d 66 (1949).

All conflicts in the testimony as to the extent and degree of petitioner's disability have been resolved in favor of petitioner by the trial judge who saw and heard the witnesses, and we are of the opinion that the trial judge has at least impliedly found that the petitioner either had not received a suitable offer of employment from his employer, or that he was not obligated to accept the same under the circumstances shown in the record. We affirm his ruling.

The assignments of error are overruled, and the judgment of the trial court is affirmed at the cost of defendants.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.