KOEHRING-SOUTHERN and AMERICAN MUTUAL INSURANCE
COMPANY

*v.*

EDWARD L. BURNETTE.

464 S.W.2d 820.

(*Knoxville,* September Term, 1970.)

Opinion filed November 16, 1970.

Petition for Rehearing Denied December 21, 1970.

148

BISHOP, THOMAS, LEITNER, MANN & MILBURN, Chattanooga, for appellants, defendants.

JOHN L. WHEELER, Chattanooga, for appellee, petitioner.

Mr. Justice McCanless delivered the opinion of the Court.

Edward L. Burnette filed his petition under the Workmen's Compensation Law against his employer, Koehring-Southern, and its insurance carrier, American Mutual Insurance Company, on September 10, 1969. He averred that while in the employment of the defendant, he received an average weekly wage in excess of one hundred dollars, that the parties had accepted and were acting under the Workmen's Compensation Law, that on April 2, 1969, he had sustained an injury which arose out of and during the course of his employment and that while he was removing a large and heavy sheet of steel from a shearing machine in the defendant's plant the crane he was using gave way, and he suffered several fractured bones in his left foot and a severe injury to his back and spine.

The petitioner further averred that during the early part of October, 1968, he had suffered an earlier injury arising out of and in the course of his employment when he had moved a heavy load of steel on a wheeled jack on the defendant's premises and his foot had slipped and he had fallen onto the concrete floor sustaining a fracture of his lower spine and a ruptured intervertebral disc, as the result of which accident he had been required to undergo surgery, and that while he had been in a weakened condition from that injury and operation he suffered the latter injury mentioned and by reason of all of which he was now totally disabled, his employer having terminated his employment on July 23, 1969. The petitioner averred that he had been accorded none of the benefits to which he was entitled under the law, and prayed that his rights be adjudicated and that he be

given a decree against the defendants for the amount to which he was entitled.

The defendants by their answer filed on October 27, 1968, admitted the injury of October, 1968, but said that the petitioner had made no claim for Workmen's Compensation benefits as a result of that injury but had made application and received benefits under his employer's group hospitalization program insured through John Hancock Mutual Insurance Company and under his employer's group hospitalization program insured through Tennessee Hospital Service Association also known as Blue Cross. They charged that the petitioner was now estopped to assert a compensation claim on account of his injury of October, 1968. They averred that the petitioner had made a full and complete recovery from the injury of April 2, 1969, that he had suffered no compensable injury as a result of his fall in October, 1968, and that he had been paid all benefits including all medical expenses which had been submitted and which had resulted from his 1969 injury.

The petitioner on February 25, 1970, amended his petition to aver that he had been admitted to the hospital on September 8, 1969, that it had been determined after the removal of some enlarged lymph nodes from the right side of his neck that they were malignant and he was now totally disabled and incapacitated, that this condition had not previously manifested itself and although he did not know that he had been afflicted with cancer before suffering the compensable injuries he averred that if he had been so afflicted the condition was dormant and that the injuries which he had suffered while employed by the defendant had greatly weakened him thereby causing or contributing to the origin and

spread of the cancer, and that as a result of which he had become totally and permanently disabled within the meaning of the Workmen's Compensation Law. He prayed a decree for his medical expenses and for the amount to which he was entitled because of his total and permanent disability.

The defendant answered the amended petition and denied that either injury of which the petitioner had complained caused, aggravated or contributed to petitioner's present disability resulting from cancer.

At the hearing before the Chancellor twelve witnesses were introduced; most of them, including the petitioner, testified in person. A few days after the hearing the Chancellor filed a memorandum opinion from which counsel prepared the final decree. The Chancellor found the petitioner to have been totally and permanently disabled as the result of his two injuries and awarded him compensation on that basis and the full amount of his medical expenses. The court did not allow the defendants' plea of estoppel or their contention that the petitioner had made an election of remedies which precluded his recovery in this suit of benefits on account of the accident of October, 1968.

The defendants have appealed from the court's decree and have assigned errors, which are:

"1. There is no proof or medical evidence in the record to support the Chancellor's conclusion that there existed a causal connection between petitioner's work-related injuries and the total and permanent disability found by the Court resulting from petitioner's cancer or its spread."

"2. The Court erred in awarding petitioner medical expenses and temporary total disability payments for the first industrial accident where petitioner had already elected and received nonoccupational benefits under his employer's group insurance plans."

Six doctors testified; they describe the petitioner's condition in much detail. The uncontradicted medical testimony was that in September, 1969, swollen lymph nodes were removed from the petitioner's neck and upon examination were found to be cancerous, the type of cancer being known scientifically as metastatic, poorly differentiated, squamous cell carcinoma. The cancer was secondary to a primary cancer in some other part of petitioner's body but which the doctors were unable to locate. Cancers of this type spread through the lymph, the blood, and sometimes directly to adjacent parts of the body. If the cancerous part of the body receives some traumatic impact it is thought that the trauma will cause the cancer to spread more rapidly than otherwise it would. The petitioner's counsel contend that this happened because of the accident of April 2, 1969.

The averments of the petition are fully established by the testimony of witnesses with the single exception of the cause of the origin and spread of the petitioner's cancer. The case on both sides has been prepared and tried with commendable thoroughness and the doctors' testimony was most interesting. It appears that none of them knows the cause of the petitioner's cancer. Much of their testimony is to the effect that its spread might have been or could have been caused by the accidental injury of April 2, 1969, when the large sheet of steel slipped from the conveyer, fractured the toes of the petitioner's left foot, and caused him to strain his back

when he pushed the steel away from his body. The following colloquy occurred between the Chancellor and Dr. Nicholas B. Norris:

"The Court: Doctor, considering the accident of April 1969, in connection with the condition that presently exists physically with regard to cancer, and the —in the petitioner, is it reasonable to conclude that the trauma, accident of April, 1969, accelerated or aggravated the condition that he is suffering from now or caused it to metastasize?

"A I think it probably caused it to metastasize, Your Honor, when he was straining to keep that steel off him, and he may have well messed the shoulder up in the right neck at that time."

The Chancellor found that "the traumatic effect of the accidents or either of them activated a dormant condition or accelerated an existing malignancy, to the extent that it was caused to spread to other parts of the body and rendered petitioner totally and permanently disabled."

This case is not the first Workmen's Compensation case in which the Courts of Tennessee have had to consider the cause of cancer and its spread where a claim for compensation under that law has been made. In *Boyd et al. v. Young,* 193 Tenn. 272, 246 S.W.2d 10, the Court, speaking through Chief Justice A. B. Neil, said:

"We think there is material evidence to support the conclusion of the trial court, conceding that the medical experts were in agreement that no one knows the cause of cancer. We think it is reasonable to conclude that the deceased had a cancerous condition of the

spine at the time of the accident, because at the time of the operation it was the size of a grapefruit and had spread into the surrounding tissue and muscles of the neck and upper back. It is really unreasonable to think that this unnatural and unhealthy condition could have developed from the time of the accident to the time of the operation which was approximately four months.

"The determinative issue is whether or not the lifting of the thirty (30) or forty (40) pound box of cheese by the deceased was such a strain upon the muscles which were connected, or nearly so, with the diseased tissues, i. e. the cancer, that it accelerated its growth and further development and was a contributing cause of his death. It is doubtless true that sooner or later the deceased would have died from the cancer, but the case is still compensable if the accident so accelerated or aggravated it that it was a contributing cause to the shortening of his life."

■ We believe that the Chancellor's opinion and the decree of the court were supported by material evidence and that we are bound by his findings. *Arrowhead, Inc. v. Gammons,* 219 Tenn. 594, 412 S.W.2d 214; *Brewer v. Pocahontas Fuel Co.,* 221 Tenn. 130, 425 S.W.2d 582. In *Lynch v. La Rue,* 198 Tenn. 101, 278 S.W.2d 85, it was observed that "if the findings of the trial judge are supported by inferences which may reasonably be had from the evidence, though that evidence be reasonably capable of opposing inferences, a reviewing court will not disturb those findings." It follows that we overrule the defendants' first assignment of error.

■ With respect to the second assignment of error it must be noticed that when the petitioner claimed and received benefits from John Hancock Mutual Insurance Company and the Tennessee Hospital Service Association, so far as the pleadings and proof show, he made no representation to the defendants.

"An essential element which is the basis of the law of estoppel in pais is that one who pleads the estoppel shall have relied on the words, acts, or omissions of the party against whom the estoppel is asserted." *Kelly v. Cliff Pettit Motors, Inc.*, 191 Tenn. 390, 234 S.W.2d 822.

So, since the petitioner made no representation to the defendants, they did not rely on such representation and the plea of estoppel cannot be sustained.

■ The defendants contend that by filing his claims against the carriers of the group insurance the petitioner made an election of remedies which precludes his asserting a claim against the defendants. The record does not disclose the terms of the policies of these two carriers so that it cannot be successfully contended that the petitioner made an election of remedies. For there to be such an election a party must choose one which is inconsistent with another that may be available to him. Such has not been shown to be the case in this suit.

In *White v. Henry*, 199 Tenn. 219, 285 S.W.2d 353, it was said:

"Appellants, in making such insistence, have, we think, overlooked the fact that in order for such an election of remedies to be irrevocable, the remedies must be inconsistent, *Grizzard v. Fite*, 137 Tenn. 103,

107, 191 S.W. 969, L.R.A.1917D, 652, and have overlooked the fact that the two remedies involved here are not inconsistent. This is because there may be error of law apparent in the decree, without regard to whether the preceding order pro confesso was legally entered.''

■ Neither John Hancock Mutual Insurance Company nor Tennessee Hospital Service Association is a party to this suit. The fact that either or both of these companies made payments to the petitioner to which he was not entitled does not give the defendants a right to such funds by offset or otherwise.

In *American Bridge Division, United States Steel Corp. v. McClung,* 206 Tenn. 317, 333 S.W.2d 557, this Court said:

''With reference to assignment 8, it appears that substantial payments of non-occupational benefits were made by the insurance Company and hospital benefits under the Blue Cross. The Company now insists that it is entitled to credit or setoff of these payments. We do not think so. The only thing paid out by the Company in this regard was one-half of the premium, the other half of which was paid by the petitioner. If on any basis these payments are to be recovered by anybody, they would necessarily be recovered by the person or firm making the payments. Neither of these non-occupational insurors, however, is a party in this action and we do not see how the question is relevant in any way.''

The second assignment of error is overruled.

We affirm the decree of the chancery court.

Dyer, Chief Justice, and Chattin, Creson and Humphreys, Justices, concur.

## Opinion on Petition to Rehear

Mr. Justice McCanless.

Koehring-Southern and American Mutual Insurance Company have filed a petition to rehear by which they insist that the Court's opinion contains errors which require a conclusion other than that announced. The petition, however, contains no matter which the Court did not fully consider while the case was under advisement.

We, therefore, overrule the petition to rehear.

Dyer, Chief Justice, and Chattin, Creson and Humphreys, Justices, concur.