BURCHAM *v.* CARBIDE & CARBON CHEMICALS CORPORATION.

(*Knoxville,* September Term, 1948.)

(May Session, 1949.)

Opinion filed July 2, 1949.

Frank W. Wilson, Oak Ridge, Olen Henderson, Oak Ridge, for complainant.

Clyde W. Key, Knoxville, for defendant.

Mr. Justice Burnett delivered the opinion of the Court.

This is a workmen's compensation suit in which the petitioner, Burcham, seeks to recover benefits under the Workmen's Compensation Act for an alleged injury inflicted on him arising out of and in the course of his employment.

On the face of the petition it was shown that the accident happened more than a year prior to the institution of the suit but this fact was attempted to be overcome by allegations to show that the injury complained of was not discovered or known to the petitioner until long after the happening of the accident which was within one year prior to the institution of the suit. The employer filed a demurrer to this petition alleging that the cause was barred by the Statute of Limitations of one year contained in Code Sections 6874 and 6884.

On March 4, 1947, the Chancellor sustained this demurrer and dismissed the suit, and granted an appeal upon the petitioners' executing a bond or otherwise

complying with the law. On April 2, 1947, and within the time allowed by the decree, the petitioner perfected his appeal to this Court by filing a pauper's oath. The record and transcript of the proceedings were not made up and filed in this Court. On September 19, 1947, there was a consent order entered in the chancery court below permitting the petitioner "to withdraw said appeal."

On February 22, 1949, within two years from the order sustaining the demurrer below, Burcham, the original petitioner, made application to one of the members of this Court for a writ of error to review the case. This petition was granted and argument has been heard before the entire Court.

The employer, Carbide and Carbon Chemicals Corporation now moves to dismiss this petition "because the complainant prayed and perfected an appeal to this Court from the final decree of the chancery court of Roane County, Tennessee, dismissing his suit and thereafter by order entered upon the minutes of the chancery court, the complainant withdrew and abandoned his said appeal".

This Court in *Capshaw* v. *Town of Cookeville*, 185 Tenn. 96, 101, 203 S. W. (2d) 369, 371 said:

"Review by appeal or by writ of error is open to every litigant as a matter of right. But these methods are alternative and mutually exclusive, for the reasons stated and on the authorities given in *Crowe* v. *Birmingham & N. W. R. Co.*, 156 Tenn. 349, 1 S. W. (2d) 781. On the authority of that case, therefore, we overrule the petition for writ of error."

It is on the basis of the *Crowe case, supra,* and the case of *Turner* v. *South Pittsburgh Lumber & Coal Co.,* 14 Tenn. App. 297, that the appellee here bases its motion

to dismiss the petition for writ of error. It, therefore, becomes necessary for us to examine rather closely the holding of this Court in the *Crowe case, supra*. The *Turner case* is based solely on the holding in the *Crowe case*.

In the *Crowe case, supra*, the appeal was perfected and the transcript filed in the Court of Appeals within the allotted time but the assignments of error were not filed within time to comply with the rules of the Court of Appeals. For this reason, on motion of the defendant, the Court of Appeals refused to hear the case. Then it was that the plaintiff in error sought to refile the record in the case for writ of error. The Court of Appeals likewise refused to hear the appeal through this route. It was on this state of the record that this Court wrote the opinion in the *Crowe case, supra*. This Court said in the *Crowe case*.

"These remedies are alternative, and a party cannot resort to both. Were it otherwise, a party could have his case reviewed upon an appeal in the nature of a writ of error, and if cast in the suit have the same case again reviewed upon a writ of error."

The Court then, *Crowe case, supra*, goes on to show that in that case "the bond was given and the transcript filed in due time, and the appeal was perfected." This Court then said, *Crowe case, supra*, that:

"This court has held that a writ of error lies where the appeal was not perfected because of failure to execute bond, or file the record in time. *Duval* v. *Brady*, 4 Lea (72 Tenn.) 528; *Covington* v. *Neilson*, 6 Yerg. (14 Tenn.) 475.

"But we have been referred to no authority holding that a writ of error will lie where an appeal has been

perfected in the case, and to so hold would be equivalent to saying that a party is entitled to have his case reviewed twice by the appellate court.''

The language last above quoted certainly would lead the casual reader to the conclusion that upon the mere perfection of an appeal that this would be in effect an election of one of the methods the losing party would pursue and by this election the losing party would be precluded from pursuing any other remedy. Upon examination of the case of *Covington* v. *Neilson, supra,* approved by this Court in the *Crowe case,* it will be seen that the Court did not intend to go as far as the language used would indicate. In the *Neilson case, supra,* the statement of counsel appended to the opinion shows that ''the plaintiff prayed an appeal in the nature of a writ of error to the Supreme Court, which was granted; he entered into a bond as required by law.'' There is absolutely nothing in the report of this *Neilson case, supra,* to show this statement is untrue. The Court then in passing on this question said this:

''The writ of error, whether we consider it here under the fiat of the judge or in virtue of the appeal prayed and granted, is well before us. One of the forms of bringing it up was good, and it is not material to enquire which was the most correct one to have pursued.''

We thus see that the identical procedural situation was present in *Covington* v. *Neilson* as in the case that we are now considering. This Court approved *Covington* v. *Neilson* in the *Crowe case, supra.*

In *Bond* v. *Greenwald & Co.,* 51 Tenn. 453, Bond sued Greenwald in the chancery court for the value of eighty-two bales of cotton. The chancellor rendered judgment for the value of fifty-two bales of cotton and to this

judgment the complainant noted an exception and.prayed an appeal. After this appeal was prayed, the appeal was waived or withdrawn and an execution had .on the judgment rendered on behalf of the plaintiff for the fifty-two bales of cotton. This judgment amounting to some $10,000, was collected. After the collection of this judgment, the plaintiff who had prayed and perfected an appeal below, yet waived this appeal and, after the collection of the judgment as rendered, was granted a writ of error. This Court heard the matter on the writ of error and rendered judgment for the value of the eighty-two bales. On petition to rehear the question now raised by the motion here was raised and this Court held that the plaintiff had a right to waive his original appeal, collect the judgment as entered and yet file a petition for writ of error in this Court.

This *Bond case* .was apparently not before this Court when the opinion was written in the *Crowe case, supra.*

The Court in the *Bond case, supra,* said: ''Looking alone to the record—and we can not look outside of it— the complainant exercised a 'plain right in praying his appeal; he indicated distinctly by that act, that although he had obtained a decree, he was not satisfied with the amount of it. He had a right to abandon the appeal, and we can not presume that he did so with a fraudulent purpose. . . . In applying for this writ of error, within the time prescribed by law, he was in the exercise of a right secured by law to either party.''

The right of accepting the benefits of a judgment and then appealing is very ably annotated in 169 A. L. R. beginning at page 985. It appears by this annotation that the general rule is contrary to that as held by this Court in the *Bond case, supra,* the general rule being

that "a plaintiff who accepts satisfaction in whole or in part of a judgment in his favor for money or property entered as upon a common-law action, waives his right to maintain an appeal or to seek a review of the judgment for error." The annotator in this annotation says that: "It is to be noticed that only by the general tendency of later American judges to exalt technical formulas has this doctrine of waiver or estoppel been raised to its present dominance. The early judges had no thought of it." The case of *Bond* v. *Greenwald, supra,* is then cited. So far as we have been able to ascertain by a diligent search, the rule in the *Bond case* has not been changed. The *Bond case* has been referred to in two or three subsequent Court of Appeals cases wherein this Court either approved that judgment orally or denied *certiorari.*

It, therefore, appears that this Court in at least two cases, that of *Covington* v. *Neilson, supra,* and *Bond* v. *Greenwald, supra,* has approved the granting of a writ of error in cases wherein the factual situation is almost identical with the case now before us.

 It would, therefore, appear that the ruling in the *Crowe case, supra,* was clearly to the effect that when a party appeals in the nature of a writ of error and perfects his appeal by giving bond and filing the transcript in due time then that he cannot later pursue the alternate method of applying for a writ of error. It would likewise appear from the cases therein cited and approved, and the *Bond case* last above referred to, that when a party has appealed in the nature of a writ of error and has merely filed a bond but has not fully perfected his appeal or brought the record into the appellate court, then in that instance he has a right to bring it

to this Court by way of the writ of error as was done in the instant case.

The real question is, has the conduct of the appellant been such that he has, either expressly or impliedly, abandoned or waived his right to an appeal? The Court cannot say that a litigant shall be denied an appeal when he has a legal right thereto; but it can determine, and it is our duty to so determine, whether or not the appellant's conduct has been such that he has waived such right. Nothing appears herein whereby it could be said that this appellant has waived his right for a writ of error. The order entered, after the case was appealed here, merely says that the appellant is "permitted to withdraw said appeal". There is not a scintilla of evidence or anything else in the record to show that the appellant received any consideration for agreeing to enter this order; he does not say by the order that he withdraws his right or waives his right to petition for a writ of error at a later date. Why the order is entered, we do not know. The petitioner hereby agreeing to this order does not waive or abandon his right to apply for a writ of error. He merely withdraws his appeal which he had filed. By so doing this is not necessarily inconsistent with his later application for a writ of error. The petitioner certainly cannot be said to be estopped from filing a writ of error later by reason of having withdrawn his appeal prior to the making up of the record and filing the same in this Court. For the petitioner to be estopped to do so it must be shown that he has gained some benefit thereby and that the appellee, here, has suffered some burden by reason of said appeal having been withdrawn as it was.

For the reasons above set forth the motion to strike the writ of error must be overruled.

Under the statements of the petition, filed in the chancery court, January 22, 1947, a compensable injury is alleged in that it was alleged that the petitioner suffered an injury inflicted by accident arising out of and in the course of his employment. The petitioner alleged that he fell down a stairway some 21 steps on or about August 1, 1945; that he went to the " defendants' dispensary the following day, where a complete written report of his accident was taken and he was examined by the defendant's plant physician, Dr. Scofield. The petitioner was advised by Dr. Scofield, 'Well, Burcham the X-rays don't show one thing in the world wrong with you. You are just shaken up and probably will be sore for a few days.' '' It is also shown that after a few weeks heat treatments, he was discharged from the dispensary ''as fully recovered and the petitioner dismissed the accident from his mind''; that in May 1946, he suffered some pain in his back and neck and was given aspirin for this at the dispensary of the defendant; that on or about June 10, 1946, he again suffered severe pains in his back and neck accompanied by fever, and that the defendant's physician pronounced this as spinal meningitis; that on July 5, 1946, he returned to work ''but suffered a relapse on or about August 14, 1946, and returned to the hospital,''; that after continuous hospitalization and examination, ''the petitioner's condition was diagnosed on *September* 9, 1949, *as osteomyelitis of the spine and the petitioner was for the first time advised that his spinal condition was the result of the aforedescribed accidental fall at defendant's plant on or about August* 1, 1945.''; that prior to September 1946, this

osteomyelitis of the spine was not diagnosed and that the petitioner had no knowledge of this injury; that subsequent to September 9, 1946, all of the physicians who had examined him had so diagnosed his condition, that is, that he was suffering from osteomyelitis of the spine and that said condition was due to the fall that he received in August, 1945; that "the petitioner's failure to make any claim under the said Act prior to September 9, 1946, was the direct result of the advice and representation of the defendant's medical staff." (Italics ours).

Under these allegations, if the facts support them, the petitioner would be entitled to have a hearing on the merits and, if the injury, now complained of, is due to this accident this would be a compensable injury.

This Court speaking through Mr. Justice GAILOR, has determined that the Statute of Limitations commences to run from the occurrence of the injury and not from the occurrence of the accident. *Ogle* v. *Tennessee Eastman Corp.*, 185 Tenn. 527, 206 S. W. (2d) 909. The reasons and authority for this holding are fully set forth in the opinion and it would be futile for us to again try to review these matters. It was said in the course of the opinion that, that decision was strictly confined to the facts of that case. We see no reason though, why the reasoning in that case is not likewise applicable to the facts averred in this case and particularly those as heretofore quoted from the petition.

This holding is in accord with most of the recent holdings in the United States. In 58 American Jurisprudence, at page 846 it is said:

"The rule in most jurisdictions is that the period within which a proceeding for the recovery of compensation may be instituted, or within which an application

or claim may be filed, commences to run when the injury accrues, or when the disabling consequences of the accident or injury become apparent or discoverable, rather than at or from the time of the happening of the accident from which the injury results; . . ."

The Supreme Court of Utah, in overruling previous decisions of that Court which held that the Statute of Limitations began at the time of the accident, said, in *Salt Lake City* v. *Industrial Commission et al.*, 93 Utah 510, 74 P. (2d) 657, 658:

"that it begins to run, not from the time of accident, but from the time of the employer's failure to pay compensation for disability when the disability can be ascertained and the duty to pay compensation arises. Holding that the statute begins to run from the time of accident instead of from the time of compensable disability or loss, in effect makes the statute begin to run before the cause of action accrues. In negligence cases the cause of action arises from the negligence which causes the accident and therefore the statute begins to run from the time the negligence operated on plaintiff, which would be at the time of the accident. But no such rule applies in compensation cases. Compensation does not depend upon negligence. The rule which applies to contracts is applicable. The Compensation Act, Rev. St. 1933, 42—1—1 *et seq.*, imposes a duty on employers to pay compensation to employees who suffer disability from an injury by accident arising out of or in the course of the employment. Not until there is an accident and injury and a disability or loss from the injury does the duty to pay arise. A mere accident does not impose the duty to pay. Accident plus injury therefrom does not impose the duty. But accident plus injury which results in

disability or loss gives rise to the duty to pay. When the employer refuses or ceases to pay compensation, the cause of action against him arises. . . . In compensation the duty to pay compensation is imposed by law rather than by contract, but the cause of action for the compensation does not arise until the loss is suffered and the employer fails or ceases to pay, and the statute of limitations runs from such time. Any other view mires us in a Stygian bog.'' WOLFE, J.

It is perfectly apparent and reasonable that in this type of case, where the injured employee is treated by the physicians employed by the employer and the employee is more or less under their will and direction, (that of the doctor), that he should not be barred from bringing his suit. When he is led by these physicians, conscientiously according to their then opinion, to believe that he has suffered no disability he certainly should not be required to bring this action. When he later determines that the injury is a compensable, a serious injury and one that rose out of the accident, his cause of action should run from the time that he first discovers this. Of course, when the compensation act in this State and others was first passed, some thirty years ago, it was natural for the courts, in applying the Statute of Limitations, to think of the Statute of Limitations somewhat in the same way that they had thought of the Statute of Limitations as applicable to common-law accidents. But as pointed out in the *Utah case*, above quoted from, this rule is not applicable to a Workmen's Compensation case.

In the *Ogle case, supra*, this Court said [185 Tenn. 527, 206 S. W. (2d) 911]: ''No reasonable construction of law could require that complainant give notice of a

disability which he did not know existed or which did not in fact, exist, or that he should file suit for a disability before he had suffered it.''

We, therefore, must conclude from the allegations of the petition, above quoted, that the cause should be remanded for the Chancellor to hear proof under these allegations. If the proof sustains the allegations sufficiently to satisfy the Court then they constitute a sufficient excuse for not having instituted this suit before it was instituted. The cause is therefore reversed and remanded for a hearing consistent with this opinion.

All concur.