LONDON & LANCASHIRE INDEMNITY COMPANY OF AMERICA
and AUTOMATIC SPRINKLER COMPANY OF AMERICA

*v.*

HAROLD P. STARCHER.

(*Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

S. J. Milligan, Greeneville, for appellants.

Walter R. Gray, Greeneville, for appellee.

Mr. Justice Burnett delivered the opinion of the Court.

"This is a suit under the Tennessee Workmen's Compensation Law, two question being presented: (1) whether or not the plaintiffs in error were given or received notice of the petitioner's alleged injury as required by statute; and (2) whether or not the petitioner sustained a compensable injury arising out of and in the course of his employment." (Opening statement of appellants' brief).

The Chancellor found that the petitioner was permanently and totally disabled due to an accidental injury which arose out of and in the course of his employment and that the employer had notice of this accident. Thus it is from this holding that an appeal has been seasonably perfected, briefs filed, questions presented as hereinabove set out and arguments heard. We have read the briefs and the record and examined the authorities cited and others, and now have the matter for determination.

According to the testimony of the petitioner on December 9, 1953, he with other laborers was lifting heavy iron pipes and he felt a sharp pain in the region of his abdomen at the time. He says that he continued to work that day and then because of a severe headache he took a number of B.C. tablets at night and came back to work the following day. He says that while he was digging in a ditch on this day and while his pick was raised as he started down with force to stick the pick in the ground he felt this severe pain in his abdomen or the lower part of his stomach, it ''got me'' and he blacked out. As a result of this a subforeman who was on the job was told about it and another employee took him to the doctor. The doctor, after making an examination, concluded that it was an appendicitis and operated for the purpose of removing the appendix. After the incision was made the doctor found that there was nothing wrong with the appendix and then upon further exploring discovered that the petitioner had suffered a ruptured peptic ulcer. This ulcer was closed but the petitioner continued to suffer and then a subsequent operation was performed which resulted in a partial resection of the stomach, leaving the petitioner with approximately one-third of a normal stomach.

The obvious contention of the employer and the insurance carrier is that this was not an injury or an accident for which compensation is payable but that it was merely a sickness or a disease of this part of the body and was not caused by any accidental injury. We will consider this question after determining whether or not under the facts of this case the statute, Section 50-1001, T.C.A., in reference to notice in these compensation cases has been complied with.

The written notice as required by the statute cuts off the right of recovery of compensation "unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented."

As we said, the Chancellor found that the employer had notice through his foreman and it was sufficiently satisfying to him that there was a reasonable excuse for not having given written notice during that 30-day period.

This Court from the inception of the Workmen's Compensation Law in 1919 has recognized that the trial court was vested with a very broad discretion under the very terms of the act. It has been recognized all the way through in the cases construing this act that, "Not only must there be no material evidence to support his finding, but it must clearly appear that there has been an abuse of discretion before this Court will reverse the judgment of the trial Court in this regard." *Tennessee Products Corp. v. Gravitt*, 182 Tenn. 54, 184 S.W.2d 164, 165. In view of this holding which is absolutely sound let us review briefly the facts as to notice in this case:

■ ■ The subforeman, Noe, was told at the time the employee was taken to the hospital out of this ditch where he was digging. Whether or not he thought it was sickness or an injury is not the question. He at least knew that the man was taken to the hospital from his place of employment. The doctor and his associate immediately operated on the man and they found this condition. The day after the operation was performed Dr. Bottomley says, in two places in this record, that he talked to Mr. Householder who is recognized as the foreman over the job, about the man's condition. Of course Householder, the foreman, denies this fact, but the doctor testifies before Householder did that it was true and he testifies afterwards, and he was very emphatic and very positive about it that he talked to this foreman at least three times within a very few days after the alleged injury and accident occurred. There are other facts in the record of the wife of the employee going to get his check, etc., and what she told different ones. Be that as it may this evidence when believed and relied on by the Chancellor is sufficient under the law and constitutes a reasonable excuse for not having given written notice. There are many cases on this question and it is needless for us to go into them and again reiterate what has been said so many times. These will be found in the footnotes to the Code Section (50-1001, T.C.A.) and others cited in *Tennessee Products Corp. v. Gravitt, supra.* We are satisfied that they had notice as required by statute.

In *Tennessee Products Corp. v. Gravitt, supra,* this Court said:

"Actual notice was had by the foreman and the doctor, and there is no showing of prejudice resulting

from the delay in giving written notice. In this situation the omission may be excused by the trial tribunal."

This very statement rather pointedly fits the facts herein.

This question of notice becomes more pronounced when we remember that the record shows this doctor's testimony that he talked to this foreman who had come to see him about this very man, that he asked the foreman to have his, the doctor's, bills paid and at the same time he told the foreman of other similar injury situations where compensation was being paid. We say this not for the fact that it has anything to do with whether or not there is liability for compensation in a case of this kind, but for the fact that it shows that the question of compensation was in their minds at the time and that notice was given of the fact. Be this as it may the trier of fact has concluded that notice was given. This trier of fact is the final judge as to the credibility of the witnesses and the weight to be given their testimony under such a situation.

We next come to the other question raised, that is whether or not the petitioner sustained a compensable injuring arising out of and in the course of his employment. The obvious argument of course is made in reference to the injury here that this was a ruptured peptic ulcer which was not caused by trauma or any injury that the man might have received. This is probably a correct statement, that is that the ulcer in and of itself was not caused by any trauma or any injury that the man had. As we understand it the employee does not claim that the ulcer in its inception was caused by any trauma or injury that he had but the claim is that by reason of his

exertion in digging this ditch or lifting the pipes that this strain or exertion caused the ulcer to rupture and thus the injury and disability complained of.

There were nine doctors who testified in this case. Of these nine, five testified for the petitioner and four for the employer. These doctors differ sharply in their testimony. Some of this difference and a lot of it can be attributed to the form of the question and the way the question is asked. Be this as it may we have several of the doctors testifying that trauma or the physical exeriton of this man as is shown that happened at that time probably was the cause of this rupture of the ulcer. We will, so as to get it in the words of the doctor, quote a few questions and answers from their testimony as follows:

Dr. Gibson—

"Q. 25. Doctor, if Harold Starcher was digging with a pick and digging dirt on the job immediately before he complained of this pain in his side on December 10, 1953, and was doing hard physical labor, could that and would that exertion and the pressure therefrom have caused the rupture of his peptic ulcer? Then there is an objection.

"A. Am I to answer the question?

"Mr. Gray: Yes.

"Ans. cont'd. Well, I think that the exertion of that type of labor could very conceivably rupture an ulcer, an ulcer with a thin wall.

"Q. 26. Could or would heavy physical labor, lifting heavy objects and digging, cause the physical con-

dition to Starcher in which you found him in, so far as his ruptured peptic ulcer is concerned?"

Exception again by defendants.

"A. Well, I think that exertion, strenuous exertion such as lifting or digging or any type of that kind can very likely rupture an ulcer, or an ulcer will rupture during those exercises. Understand that is not the cause of the ulcer; the ulcer is present already, but ulcer may follow injuries, or trauma, to the abdomen. I think medical records have been recorded in the test books that trauma may be cause of peptic ulcer. Peptic ulcer at least follows trauma.

"Q. 27. State whether or not the condition of Starcher's peptic ulcer was greatly aggravated by heavy labor such as lifting heavy objects or digging."
Another exception.

"A. It could very easily be the immediate cause of the rupture. The rupture could be produced at the time of such exertion."

And then Dr. Bottomley on page 93 is asked:

"Q. Did the work that Starcher was doing cause the rupture of the peptic ulcer? A. In my opinion it contributed to the rupture of the peptic ulcer.

"Q. Doctor, would physical labor such as Starcher was doing in digging a ditch aggravate a peptic ulcer and cause it to rupture or not?"
Excepted to:

"A. My answer to that would be yes."

And then Dr. Dyer on page 109 of the record is asked

a hypothetical question which covers the facts herein and he answers:

"A. It was a factor in the rupture of the peptic ulcer. I can't say it was the direct cause or was definitely the entire cause but it was a contributing factor."

The record abounds with testimony of this nature. It is true there is testimony which is opposite but the Chancellor who had all of these doctors before him or at least by depositions, accredited their testimony and we see no reason to discredit them. To the mind of the layman it at least sounds reasonable that with the right kind of physical exertion or strain at the time it might cause a rupture of the ulcer. We do not intend to comment on that fact or to express any opinion because it is something that we know nothing about, but it at least sounds reasonable.

One other statement by Dr. Haskell Fox who was likewise asked a hypothetical question covering the facts herein and he answered:

"A. I consider it a probable contributing factor."

The medical testimony shows that upon the rupture of the peptic ulcer that the pain is so intense that it is almost immediately disabling. The petitioner testified that when he was down in the ditch digging with this pick, "I drew the pick up again and something, I don't know what got me in there and it went to the lower part of my stomach." It was then that he to some extent blacked out and was taken to the hospital.

The very able and forceful argument is made that the courts must enter into the realm of speculation to say

that there was any injury or accident or anything done by this man in his work that caused his disability. This was held in two cases heretofore decided by this Court wherein the Court reached the conclusion that it was speculation to conclude that ruptures of ulcers in those cases was due to any injury that the man had while on the job. The first of those cases was *Sutton Bros. v. Hutchins*, Polk Law, about 1934, and the second was *Smith v. Pennington Coal Co.*, 1951, Scott Law. Neither of these cases was published. In the second case, that is the 1951 case, this Court speaking through Mr. Justice Gailor, held that the evidence in that case was not near as strong as it was in the Sutton Bros. case, which had theretofore been decided by this Court wherein it was held that any evidence of an injury would be purely speculation.

The test of the Sutton case is contained in this language of the Court:

"The decision of this court was distinctly rested on the proposition that all the proof left it conjectural whether deceased died as the result of the injuries caused by accident, or whether he died as the result of injuries caused by his disease. Whether the duodenum was burst by a fall or whether it was burst by the gradual weakening of that organ from the ulcer. This is the most that can be said of the proof in petitioner's favor—the most that can be made of the testimony of petitioner's doctors. It is well settled that an award or judgment cannot be based on conjecture." In the Smith Coal Company opinion it was said:

"The evidence is conclusive that Smith's disability was caused solely by a perforated or ruptured duode-

nal ulcer, and there is no evidence that the rupture or perforation of the ulcer was caused by an accident arising out of and in the course of Smith's employment by the Defendants.''

Thus it is that the cases particularly relied on here to support the employer's appeal both definitely show that there was no proof as there is in this case. In the case before us there is the definite statement of a number of doctors that this work which was being done there at that time at least aggravated and caused the ulcer to rupture at the time. We cannot see any difference in the strain or aggravation here which caused this rupture and those that have caused a diseased heart to rupture for which injuries have been held compensable, and other similar cases.

In *Great American Ind. Co. v. Friddell,* 198 Tenn. 360, at page 365, 280 S.W.2d 908, at page 910, we made this statement which is peculiarly applicable here:

''The fact that it may be unusual for a ruptured appendix to have a traumatic origin, or even that such a result is exceedingly improbable, does not require a holding that the trauma did not in a particular case have such a result. If, as here, there is material evidence of a causal connection between the injury or accident and the resulting disease or diability, no more is required.''

In *Patterson Transfer Co. v. Lewis,* 195 Tenn. 474, 260 S.W.2d 182, 184, we gave approval to the statement from the Maine case [*Patrick v. J. B. Ham Co.,* 119 Me. 510, 111 A. 912, 13 A.L.R. 427] as follows:

"It is now well established that ordinary and usual exertion at work resulting in injuries, is compensable. Awards have been upheld on the basis of accidental injury where the strain in tightening a nut in the ordinary manner, caused an aneurism to break."

We could go on ad infinitum citing various and sundry illustrations and cases which support this view. It is clearly borne out by the great weight of authority and we think in view of the reasons for the Workmen's Compensation Act is the sensible view.

Mr. Larson in his work on this subject (Workmen's Compensation Law), Vol. 1, Sec. 28.20, p. 519, makes this very apt statement:

"A clear majority of jurisdictions now hold that when usual exertion leads to something actually breaking, herniating, or letting go, with an obvious sudden mechanical or structural change in the body, the injury is accidental. So we find an overwhelming majority compensating for hernia, and a substantial majority compensating for cerebral hemorrhage, arterial or bloodvessel rupture, ruptured aneurism, apoplexy, ruptured appendix, herniated intervertebral disc, stomach rupture, dislocated kidney, dislocated cervical cord, and detached retina, even when the exertion or conditions producing the change were not out of line with the ordinary duties of the job."

For the reasons herein stated the judgment below must be affirmed with costs.