JADY WARD, Petitioner,

*v.*

NORTH AMERICAN RAYON CORPORATION and LIBERTY MUTUAL INSURANCE Co., Respondents.

366 S.W.2d 134.

(*Knoxville,* September Term, 1962.)

Opinion filed March 13, 1963.

ALLEN, NELSON & BOWERS, Elizabethton, for Petitioner.

SIMMONDS, BOWMAN & HERNDON, Johnson City, for respondents.

MR. JUSTICE FELTS delivered the opinion of the Court.

This was a workmen's compensation suit brought in the Chancery Court by complainant Ward against defendants North American Rayon Corporation and its insurance

carrier, to recover compensation for permanent total disability alleged to have been caused him by accident and by occupational disease arising out of and in the course of his employment.

The Chancellor found complainant had sustained a 50% permanent partial disability to the body as a whole, and awarded him $32 per week for 200 weeks, together with all his medical and hospital expenses. Defendants filed a motion for a new trial, which was overruled, and they prayed and were granted an appeal in the nature of a writ of error, but failed to execute an appeal bond within the time allowed by law.

But defendants filed a duly certified copy of the transcript of the record, a petition for writ of error, accompanied by assignments of error, a cost bond, and a supersedeas bond. All this having been done within less than a year from the entry of the final judgment, the writ issued as a matter of right. T.C.A. secs. 27-601, 27-602, 27-604. *Cockrill v. Peoples Savings Bank*, 155 Tenn. 342, 347, 293, S.W. 996; *State for the Use & Benefit of Lawrence County v. Hobbs,* 194 Tenn. 323, 329, 250 S.W.2d 549.

Respondent Ward has filed a motion to strike the petition for writ of error and to dismiss the writ, asserting as grounds therefor that since plaintiffs in error undertook to appeal this cause and did file an appeal bond, but too late, and since the record does not show they have abandoned the appeal, they are not entitled to a writ of error; that appeal and writ of error are alternative remedies and a party may not resort to both.

This motion is without merit and is overruled. It is true that a party is not entitled to have his case re-

viewed twice by the appellate court; that an appeal or an appeal in the nature of a writ of error is an alternative remedy to a writ of error; but a writ of error lies as a matter of right from a final judgment in all cases where an appeal in the nature of a writ of error would have lain. T.C.A. 27-601, 27-602, 27-604, 27-605.

■ Where an appeal or an appeal in the nature of a writ of error was not perfected because of failure to file an appeal bond in due time, a writ of error lies as a matter of right. *Crowe v. Birmingham & N. W. Ray. Co.,* 156 Tenn. 349, 352, 1 S.W.2d 781; *Burcham v. Carbide & Carbon Chemicals Corp.,* 188 Tenn. 592, 221 S.W.2d 888.

And even where a party "perfected his appeal to this Court by filing a pauper's oath," but failed to bring up a transcript of the record, and later a consent decree was entered in the lower court permitting him "to withdraw said appeal," we held that he still had a right to a writ of error. *Burcham v. Carbide & Carbon Chemicals Corp.,* supra. See also, *State for the Use & Benefit of Lawrence County v. Hobbs,* supra; *Ragsdale v. Hill,* 37 Tenn.App. 671, 681, 269 S.W.2d 911.

This brings us to the merits of the case. Defendants below, plaintiffs in error here, through a number of assignments of error, insist that the Chancellor erred in finding and decreeing that Ward had sustained a disability of 50%, or to any extent, by accident or by occupational disease arising out of and in the course of his employment; and that there is no material evidence to support the Chancellor's findings and decree.

It appears that plaintiff in error North American Rayon Corporation operates a large plant in Carter

County Tennessee where it employs numerous employees in the production of rayon. Complainant Ward was employed in this plant as a helper to a pipe fitter. His duties were to pick up insulation, asbestos and cork, which was in pieces, each weighing about 5 pounds, unroll them, and hand them up to the pipe fitter who was working on a ladder. This work required Ward to step up several rungs on the ladder in handing up the pieces, and the unrolling of the asbestos released dust which was inhaled by Ward.

On September 4, 1959, while doing this work, he became ill, coughing or spitting up blood. His foreman sent him to the first aid department of the plant where he saw a nurse and the plant doctor. He said he told the doctor he was nervous, sick at his stomach, and had spit up blood; and that he was "broke down with poison." The doctor gave him a note to his foreman suggesting that he be taken off the work of handling insulation and given other work, and told him to report back in a day or two if he did not feel better.

He returned to work, was put upon another job, did not report back to the doctor, but continued to work until September 21, 1959, at which time the Company, owing to the slackness in the rayon market, found it necessary to reduce its work force, and laid off 17 employees, including complainant Ward. Though there is some contention to the contrary, it appears that there was no relation between Ward's sickness on September 4th and the lay-off of him with the others September 21st. In laying off the men, preference was given to seniority, as provided in the contract of employment with their bargaining agent.

He testified that from September on, he suffered from a multiplicity of ills and pains; his chest hurt him; and he

spat up blood; his neck pained him in the area of the cervical spine, and his right arm and shoulder pained him and at times is paralyzed and useless; his lower back hurts him and his hip is out of joint and his leg hurts. He was also highly nervous and had difficulty in sleeping and in walking. He suffered from shortness of breath, loss of appetite, weight, and energy.

He also testified that at various places in the shop where he worked there were chemicals, paints, gases and fumes to which he was exposed, and that he lost the sight of his left eye when he was sprayed with a chemical, which loss, however, had happened more than a year before, and no claim was made or suit brought on account of that injury. He also said that, in handling the insulation and asbestos, he inhaled dust and suffered from shortness of breath and spitting up blood.

He further said that on September 4th, he became ill while handling the insulation (asbestos and cork), and taking it up the rungs of the ladder to the pipe fitter; and he attributes most of his injuries to the strain of this exertion. He also thought he may have injured his hip sometime before that (he does not remember the date), when he and another man carried a 200 pound box of insulation up five stories.

He testified that from September 4th on, he dragged himself to work day after day, with his neck, his chest, his hip, his lower back, and his leg hurting him, and suffering from shortness of breath; that he did not report back to Dr. Pearson at the first aid station of the plant, because the doctor had not given him any treatment, and he did not see any use in going back.

He said that while he was suffering from all these ills and injuries, he did not know the nature or seriousness of his troubles until about a month after he was laid off, when he went to see Dr. Stine, a chiropractor, and then he learned for the first time the nature of his injuries. Ward testified that he was totally and permanently disabled. He introduced his wife, Mrs. Ward, as a witness, who supported his testimony as to his being in pain and bad health. She also stated that he had lost his ability to be a man and a husband to her.

His other witness was Dr. Stine, a chiropractor. Dr. Stine testified that he had examined Ward on October 24, 1959, and had made Neurocalometer readings and X-rays of his spine. He said the Neurocalometer readings showed several points of nerve interference in his spine, and X-rays revealed a subluxation of the Atlas and Axis vertebrae; that there was an abnormal curvature in the middorsal region (which could contribute to his digestive disturbance) and a nerve spasm at the base of the skull. The nerve pressure in the spine could have caused Ward to be nervous.

He also testified that Ward's lifting five-pound batches of asbestos up three rungs of the ladder would tend to dislocate his hip, his shoulder, his neck, and cause him to spit up blood. Dr. Stine also said that since Ward had complained about his lungs and shortness of breath, and had spit up blood, he thought Ward might have silicosis, an occupational disease. So, he sent Ward to an X-ray doctor, who reported that Ward's lungs were negative. Dr. Stine admitted he was not an expert on silicosis and could not treat diseases.

Defendants introduced Dr. Ben Hall, a practicing physician, specializing in internal medicine, and a Diplomate of the American Board of Internal Medicine and a Fellow of the American College of Physicians. He had examined Ward February 8, 1960, sometime after this suit was brought at the request of defendants. He testified that, inasmuch as Ward gave a history of a multiplicity of symptoms referable to almost every organ and system in the body, he made a thorough and extensive examination of him.

Dr. Hall found no abnormalities except some skin blemishes; the nerves, kidneys and heart appeared normal. The X-rays also appeared normal. Dr. Hall could find no evidence of any disease, and stated "with considerable certainty" that there was no evidence of carbon disulphide poisoning, pulmonary lung injury due to inhalation of noxious fumes. In short, Dr. Hall found nothing wrong with Ward except that he did appear to be nervous.

Defendants also called as their witness Dr. Hankins, a specialist in radiology. He examined the X-rays that had been made by Dr. Stine, and interpreted them. He said they showed the bones to be normal in size, shape and position, and there was no evidence of any bone injury or dislocation or any abnormality of the bones. He said, however, that since an X-ray film is "a study of shadows," revealing only the denser structures of the body, it would not show damage to tissues or nerves, except by their secondary effects, such as changes, dislocations or narrowing of the bones or vertebrae.

Dr. Pearson, the plant doctor who saw Ward in the first aid department on September 4, testified that Ward

then complained only of an upset stomach, which he attributed to handling asbestos. Dr. Pearson said that this seemed very far fetched, but giving Ward the benefit of the doubt, he had him transferred to other work, and told him to report back in a day or two if he did not feel better.

Such is a brief resume of the evidence upon which the Chancellor found Ward had suffered the injuries to his neck, shoulder, arm, chest, back, hip, leg, and nervous system, as claimed by him; that he also had silicosis, an occupational disease; that these multiple injuries were caused by accident arising out of and in the course of his employment, and this disease was due to a hazard of the employment; and that, in consequence, Ward had sustained a 50% permanent partial disability to the body as a whole.

■ This being a workmen's compensation case, the Chancellor's findings of fact, if supported by any substantial evidence, are conclusive upon us—conclusive not only as to the credibility of the witnesses and the basic evidentiary facts, but also as to the inferences reasonably drawn from such facts. *Atlas Powder Co. v. Leister,* 197 Tenn. 491, 274 S.W.2d 364; *Gen. Shale Products Corp. v. Casey,* 202 Tenn. 219, 303 S.W.2d 736; *J. E. Greene Co. v. Bennett,* 207 Tenn. 635, 640-641, 341 S.W.2d 751.

■ By "substantial evidence," as here used, is meant "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chief Justice Hughes, *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126, 127, 140; *Cude v. Culberson,* 30 Tenn.App. 628, 639, 209 S.W.2d 506.

Plaintiffs in error submit that the testimony adduced on behalf of Ward—that of himself, his wife, and the chiropractor—does not rise to the dignity of evidence, does not amount to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and is not logically or legally sufficient to permit the findings made by the Chancellor; and that this is especially true in view of the fact that all of the competent medical evidence in the record completely negatives the existence of the injuries and disease claimed by Ward.

It is true there may be cases of injuries or diseases in which the ultimate issue or issues are so complicated and so peculiarly within the range of medical science that they cannot be resolved without the aid of expert medical evidence, and which the trier of fact cannot determine independently in defiance of the only medical evidence in the record. 2 Larson's Workmen's Compensation Law, secs. 79.51-79.54; Cf., *National Life & Accident Ins. Co. v. Follett,* 168 Tenn. 647, 654-655, 80 S.W.2d 92.

In most cases, however, it has been generally recognized that the Trial Judge is not bound to accept the testimony of medical experts, but may determine the issues from all the evidence, both expert and non-expert, having due regard to the inherent limitations upon lay witnesses as to the matters to which they may testify and the admissibility of their testimony in such matters. *Armstrong Construction Co. v. Sams,* 197 Tenn. 208, 213, 270 S.W.2d 561; *Hamlin & Allman Iron Works v. Jones,* 200 Tenn. 242, 246, 292, S.W.2d 27; *McKenzie v. Campbell & Dann Mfg. Co.,* 209 Tenn. 475, 354 S.W.2d 440.

In *Hamlin & Allman Iron Works v. Jones,* supra, this Court, referring to the limitations upon a lay witness'

testimony and the matters as to which such testimony is admissible, quoted with approval the following (200 Tenn. 246, 292 S.W.2d 29):

"While a nonexpert or lay witness may not testify as an expert and give expert testimony as to the character or extent of a personal injury which he has sustained, or as to the effect of the injury, a witness may state simple inferences drawn by him from his own conscious subjective sensations as to his physical condition, and, according to some cases, may state his notion or feeling as to the character or extent of an injury and the personal results he has experienced therefrom. So it has been held or recognized that it is permissible for a witness to state his physical symptoms; the pain which he suffered after an injury; how he suffered, and the extent of his suffering, by reason of a personal injury; the effect of injuries on his health or physical condition, or of sickness or injuries on his ability to work or on his earning capacity; * * *."

As we have seen, Ward testified in detail as to matters tending to show the occurrence of an accident or accidents causing the injuries complained of; and he testified very fully as to his own conscious subjective sensations and his inferences therefrom as to his physical condition, and also as to his physical symptoms, the pains he suffered, the injuries to his health, and his disability to work and loss of earning capacity; and he was corroborated by his wife to some extent.

As to his only other witness, the chiropractor, Dr. Stine, plaintiffs in error insist that the Chancellor should not have allowed him to testify as a medical expert, because he was not a physician, surgeon, or a medical

expert, and was not authorized or permitted by law to administer or prescribe drugs or medicine of any kind; nor did he qualify as a radiologist or as an expert in making or interpreting X-ray pictures.

This Court has not heretofore been called on to determine the question as to the limits of admissibility of the testimony of a chiropractor in such a suit as this. It seems the general rule in a number of other states is that a chiropractor is competent to testify as an expert as to matters within the limited scope of his profession. Anno., 52 A.L.R.2d 1384. Our statute (T.C.A. sec. 63-401) defines "chiropractic" as "the science of palpating, analyzing, and adjusting the articulations of the human spinal column and adjacent tissues by hand."

So we think this witness was competent to testify as to the nerve interference in Ward's spine, the subluxations of his vertebrae, and the abnormal curvature of the spine. He was also competent to express an opinion as to the probable causes and effects of these injuries. He did testify as to these matters, within the scope of his profession, and his testimony as to such matters tended to support the case for complainant Ward.

We think, however, he was not competent to testify as an expert as to occupational diseases, or as to whether Ward had silicosis, these being matters outside the scope of chiropractic; and it is generally recognized that "it is the work of a specialist to diagnose silicosis," and "a general practitioner of medicine would not ordinarily be capable of making a proper diagnosis." *Wilson v. Van Buren County*, 196 Tenn. 487, 492, 268 S.W.2d 363.

Dr. Stine really did not undertake to express an opinion that Ward had silicosis. He merely said that he

had at first suspected Ward might have this disease, but that the radiologist to whom he sent Ward reported that the X-rays showed no evidence of silicosis. The Chancellor, however, found that Ward had silicosis. In his findings he said:

"The general physical condition of the complainant was observed by this Court. His testimony is that he has a shortness of his breath, a loss of weight, loss of appetite and loss of energy. These are clear indications of silicosis and the disabling of his lung cavity. Coupled with the fact that there [is] evidence in this record that he spat up blood. All of these symptoms are evident, coupled with an exposure to asbestos. The record shows that he worked with asbestos daily, that further the evidence shows that these symptoms have been developing and it is a matter of medical history that when silicosis one time takes hold of a man's lungs that he may never expect the onslaught of that disease to discontinue."

This finding is without support in the evidence. Ward's shortness of breath, loss of weight, appetite and energy, may well have been due to many other things than silicosis; so may the spitting of blood, since there was no proof it came from the lungs, and may as well have come from the alimentary canal (or the esophagus, stomach, etc.); and all the X-rays negatived silicosis.

 Laying aside this unsupported finding, there remains the other part of the Chancellor's findings, that Ward had suffered the injuries, as claimed by him, by accident arising out of and in the course of his employment; and that such injuries had caused him a 50% permanent partial disability to the body as a whole. We

cannot say that this finding is not supported by substantial evidence.

■ Plaintiffs in error insist that the Chancellor erred in finding that the employer had actual notice of the accident and the injuries to Ward; and that he should have held that Ward's claim for compensation was barred by his failure to give the written notice required by the statute (T.C.A. secs. 50-1001, 50-1002).

As we have seen, on September 4, on the day of the accident to Ward while handing up the insulation, he reported it to his foreman and told the foreman that he was sick and was spitting up blood. The foreman sent him to the first aid department where he was seen by the plant doctor, whom he said he told that he was nervous, sick, spitting up blood, and was "broke down with poison."

The doctor had him transferred to other work, and though he was suffering from his pains and injury, he continued to work until he was laid off on September 21st. He further testified that he then did not know the nature and extent of his injuries; and he gave written notice November 2, 1959, which was as soon as he learned the extent of his injuries and disabilities.

The Chancellor found that the employer had actual knowledge of the accident and of the injuries to Ward and further found that to his satisfaction there was reasonable excuse for the delay in giving the formal written notice. We cannot say that this finding is not supported by material or substantial evidence or that it appears that there was an abuse of discretion on the part of the Chancellor in this regard. In *Tennessee Products Corp. v. Gravitt*, 182 Tenn. 54, 56, 184 S.W.2d 164, this Court said:

"We have heretofore recognized the broad discretion vested by the express terms of the statute in the trial tribunal. Not only must there be no material evidence to support his finding, but it must clearly appear that there has been an abuse of discretion before this Court will reverse the judgment of the trial Court in this regard. We said in *Marshall Const. Co. v. Russell,* 163 Tenn. 410, 413, 43 S.W.2d 208, 209, that this '[is a question] peculiarly for the trial judge,' this being in accord with the language of the statute."

The holding in that case has been followed in our later cases, some of which are: *Edwards v. Harvey,* 194 Tenn. 603, 606, 253 S.W.2d 766, 768; *Bond Bros. v. Spence,* 198 Tenn. 316, 321, 279 S.W.2d 509; *London & Lancashire v. Starcher,* 202 Tenn. 278, 281, 282, 304 S.W.2d 87, 88-89; *Brown Shoe Co. v. Reed,* 209 Tenn. 106, 117, 350 S.W.2d 65, 70.

Plaintiffs in error contend that the Chancellor erred in including in the allowance to Ward the medical expenses for his treatment by the chiropractor, Dr. Stine. They contend that the statute (T.C.A. sec. 50-1004), providing the employer shall furnish medical care to the injured employee, manifests the intent that the employer is to select the physician, and that Ward, without consulting them, had no right to employ Dr. Stine and charge them for his services.

There is no dispute as to the facts pertinent to this proposition. Nor did the Chancellor make any finding as to the facts. The evidence shows that the employer's plant doctor told Ward on September 4th to come back in two or three days if he did not get better. Ward did not go back or give his employer any further notice that he was suffer-

ing from any injury or in need of medical treatment. But without consulting his employer, he employed Dr. Stine, who treated him 50 times and rendered a bill for $245.00.

We think this case is ruled by the cases of *Laughlin Clinic v. Henley,* 208 Tenn. 252, 260-261, 345 S.W.2d 675; *Manley v. Jefferson City,* 207 Tenn. 648, 343 S.W.2d 358; and *Proctor & Gamble v. West,* 203 Tenn. 138, 145, 310 S.W.2d 175, where, under like circumstances, the employer was held not liable for the bill of doctors employed by the employee without notice to or consultation with the employer.

Plaintiffs in error have raised some other matters. We have carefully considered all of them and think they are without merit and do not require further discussion.

The Chancellor's decree is modified as above indicated, by reversing so much of it as allowed compensation for medical expenses to Dr. Stine, and as modified, is affirmed. The cause is remanded to the Chancery Court for further proceedings not inconsistent with this opinion. The costs are adjudged against plaintiffs in error.