A. B. SMITH and C. A. Smith d/b/a
Smith Mechanical Contractors,
Appellants,

v.

Fred H. HALE, Appellee.

Supreme Court of Tennessee.

Sept. 22, 1975.

Frank K. Moore, J. Patrick Ledford,
Moore, Stout, Waddell & Ledford, Kingsport, for appellants.

Larry R. Dillow, Dillow & Hopson, Kingsport, for appellee.

## OPINION

FONES, Chief Justice.

This appeal of a workmen's compensation award of fifty (50%) percent permanent partial disability to the body as a whole, is based upon an insistence that it was error to award more than ten (10%) percent of the right upper extremity because that was the opinion of the treating orthopedic physician.

## I.

Employee, Hale, was employed as a plumber's and sheet metal helper. He was walking on a ceiling beam between the roof and ceiling at a school building when he fell through the ceiling, landing on his head, right shoulder and back on the concrete floor after striking a seat on the way down.

Doctor Maloy, an orthopedic specialist, testified that his x-rays revealed a fracture of the collar bone with displacement of the bones; that the fracture healed but had an abundant amount of callus or healing bone present. This left a hump on the right shoulder.

According to employee he fell from a height of more than fifteen (15) feet and although only his shoulder was treated by Dr. Maloy, he complained about his neck and his spine. He has sharp pains "up the back of my spine" and is not able to go hunting because the kick of a shotgun would hurt his back.

Doctor Maloy was of the opinion that employee had a ten (10%) percent permanent partial disability to the upper right extremity. It was his opinion that employee would suffer discomfort and be limited in performing any work that involved reaching above his shoulder and head for any period of time. It is not clear from his testimony whether he felt that employee would suffer a limitation in the amount of lifting that he might perform.

Doctor Pannell, a chiropractor who began treatment of employee approximately two (2) months after the injury, testified that the collar bone injury affected the spine; that it is adjacent to and articulates with the transverse process of the spine, and that any time an adjacent bone to the spine, like a rib, is fractured and shortened, a permanent situation manifests itself. He was of the opinion that the condition was permanent and that employee suffered between fifty-five (55%) percent and sixty (60%) percent disability to his spine.

Employee testified that he had no special training except for the kind of work that he was engaged in at the time of the injury; that his duties required climbing, stooping, bending, lifting and overhead work. Prior to the accident he was strong and able bodied and performed heavy lifting without difficulty. After attaining maximum recovery from his injury his ability to lift and climb was impaired; the grip in his right hand and the use of his right arm were also impaired. He testified that he continues to have pain in his neck, shoulder and spine. Prior to the accident he worked out with weights and in addition to his employment did heavy work around the house, worked on his car and motors, etc. Since the injury he has been unable to do any heavy work. Employee lived in the home of his parents both of whom testified, corroborating his testimony with respect to limitations upon his work capacity since the injury.

## II.

The learned Chancellor awarded fifty (50%) percent permanent partial disability to the body as a whole. In his findings of fact, the Chancellor went into considerable detail, which may be summarized as accepting at full value the lay testimony with respect to employee's work disability and Dr. Pannell's testimony that the accidental injury, and the healing with a callus hump have affected the spine permanently.

Employer's three (3) assignments of error merge into the one assertion that the only competent medical testimony is that employee suffered a ten (10%) percent permanent partial disability to his right arm. In support of the alleged error, employer argues that lay testimony cannot establish permanency of disability and inferentially, that it is not competent on the issue of "work" disability; that the collar bone is beyond the scope of a chiropractor's competence and that his testimony must therefore be rejected.

## III.

In *Pulaski Rubber Company v. Rolin*, 481 S.W.2d 369 (Tenn.1972), two doc-

tors testified that the employee had sustained a ten (10%) percent disability to the right arm and the trial judge awarded twenty-five (25%) percent. The assignment of error was that the judgment of the court was not in keeping with the medical proof. The assignment was rejected. The court stated the well established rule in this state that there is a difference between a medical disability and the legal meaning of disability under the workmen's compensation statutes, often referred to as work disability.

> "—The measures of disability, in a medical sense, are substantially more narrow than those contemplated by the Workmen's Compensation statutes. In determining what may constitute permanent total disability, the concepts embodied in Workmen's Compensation take into account many pertinent factors, including skill, education, training, duration and job opportunity for the disabled." 481 S.W.2d at 371.

 Where medical testimony establishes the permanency of an injury, lay testimony becomes admissible and relevant on the issue of the extent of the work disability. There is sufficient material evidence in this record to support the finding of the trial judge that the work disability in this case was fifty (50%) percent.

In *Ward v. N. A. Rayon Corp.*, 211 Tenn. 535, 366 S.W.2d 134 (1962), the court held that a chiropractor is competent to testify as an expert as to matters within the limited scope of his profession. The scope of the profession is defined in T.C.A. § 63–401 as the science of palpating, analyzing, and adjusting the articulations of the human spinal column and adjacent tissues by hand. In *Ward* the court observed that the chiropractor was competent to testify as to the nerve interference in Ward's spine, the subluxations of his vertebrae, and the abnormal curvature of the spine.

> ". . . He was also competent to express an opinion as to the probable causes and effects of these injuries." 211 Tenn. at 547, 366 S.W.2d at 139.

The testimony of Dr. Pannell was clearly admissible in this case. The fact that he readily admitted that the treatment of the fracture of the collar bone was beyond the scope of his profession, as it clearly is, did not affect the admissibility or the relevance of his testimony with respect to the condition of employee's spine and the cause and effect of such condition.

The learned Chancellor's findings of fact are supported by substantial evidence and are conclusive upon us. The decree of the Chancery Court is affirmed. The costs are adjudged against employer.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.