Dana WARD, Plaintiff-Appellee,

v.

CONSOLIDATION COAL COMPANY,
Defendant-Appellant.

No. 18225.

United States Court of Appeals
Sixth Circuit.

Feb. 5, 1969.

W. Keith McCord, Knoxville, Tenn., Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., of counsel, for appellant.

Paul E. Parker, Knoxville, Tenn., O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., of counsel, for appellee.

Before O'SULLIVAN and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

Consolidation Coal Company appeals from a judgment of the United States District Court for the Eastern District of Tennessee awarding disability benefits under the Tennessee Workmen's Compensation statute to Dana Ward. The following facts were found by the District Judge, and where his findings were on disputed evidence we are satisfied that they were not clearly erroneous.

Plaintiff-appellee, a coal miner, sustained a back injury while engaged in lifting rails for his employer, appellant-company, in November, 1964. He reported his injury to the company which sent him to a Dr. Spray on November 16. Dr. Spray discharged him to return to work on November 23 without explaining to him his precise injury but made a written report to the company of his examination's findings. This report told the company that Ward's injury resulted in a ruptured disc, but Ward was not then made aware of such fact by either the doctor or the company. While working after his November, 1964, injury, Ward suffered pain in his back from time to time, but continued working until June 3, 1966, when he was laid off due to lack of work. When called back on June 14 of that year, the company directed him to work on another shift. There was evidence that he was then required to make eight trips of over 600 feet, walking in a stooped position through the mine, rather than trips of 300 feet as before, and did not have as much help in lifting doors on mine cars as previously. This added work apparently aggravated the condition of pain in his back. Ward told the company of this situation. From June 25 to July 18 the mine closed for vacation and plaintiff went to a Dr. Sensenbach for three treatments. Plaintiff returned to work on July 18 and, after working four days, asked for a leave of absence to recuperate. Plaintiff had, at times when the mines were down or during periods of layoff, carried on some contracting remodeling work, doing the contracting, supervising and purchasing of materials himself, but hiring others to do the heavy labor. This was not a significant operation.

On November 2, 1966, plaintiff saw a Dr. Tittle, a partner of the Dr. Spray who had originally examined Ward at the time of the 1964 injury. Tittle then advised Ward that he had a ruptured disc as a result of the 1964 injury. He told him not to return to work and recommended an operation. On March 13, 1967, plaintiff filed suit against the company for payment of medical expenses and disability benefits as provided by the Tennessee Workmen's Compensation Law. The District Court held that plaintiff was 85% permanently and partially disabled, and awarded benefits accordingly. We affirm.

The company alleges three basic grounds for appeal: 1) that the one-year statute of limitations under T.C.A. §§ 50–1003 and 50–1017 began to run against appellee from the time of his accident in 1964 and thus bars this suit which was not brought until 1967; 2) that, even if appellee's claim is not barred by the statute of limitations, it is barred by his failure to give written notice to his employer within 30 days of injury as required by T.C.A. § 50–1001; and 3) that appellee was not entitled to an award of 85% permanent partial disability because there was evidence that his disability was only 15 or 20% and he

was capable of realizing earnings in working as a contractor.

1) Statute of Limitations.

■ If the limitations period begins to run from the time of the "accident" (undisputedly November, 1964), as appellant contends, suit is now barred. If, however, the period begins to run from the time appellee first discovered that he had a ruptured disc (November, 1966), which appellee argues is the time of "injury", the suit may be brought.

The two applicable statutes, T.C.A. §§ 50–1003 and 50–1017, use the terms, "accident" and "injury" interchangeably.

"50–1003. The right to compensation under the Workmen's Compensation Law shall be forever barred, unless within one (1) year after the accident resulting in injury or death occurred the notice required by § 50–1002 is given the employer and a claim for compensation under the provisions of this law is filed with the tribunal having jurisdiction to hear and determine the matter; provided that, if within said one (1) year period voluntary payments of compensation are paid to the injured person or his dependents, an action to recover any unpaid portion of the compensation, payable under this law, may be instituted within one (1) year from the time the employer shall cease making such payments, except in those cases provided for by § 50–1024."

"50–1017. The time within which the following acts shall be performed under this law shall be limited to the following periods, respectively.

"(1) Limit of time of actions or proceedings. Actions or proceedings by an injured employee to determine or recover compensation, one (1) year after the occurrence of the injury; except as provided in § 50–1003."

The Tennessee Supreme Court, however, has consistently interpreted the statutes to the effect that the limitation period begins to run from the time of "injury" and not from the time of "accident". In Imperial Shirt Corp. v. Jenkins, 217 Tenn. 602, 399 S.W.2d 757 (1966), plaintiff hurt his back in November, 1961, and went to a doctor who advised only heat treatments and sent him back to work. He worked for two years with occasional back pains. Not until February, 1964, did another doctor diagnose his condition as a herniated disc. In sustaining an award of Workmen's Compensation benefits, the Tennessee Supreme Court said:

"We in Griffitts v. Humphreys, supra, and other cases have changed the period to the 'injury' type not necessarily by judicial determination but by accepting recognized standards in construing statute of the Legislature wherein the Legislature after enacting the first statute, T.C.A. § 50–1003, enacted many years later the provision in the other statute, T.C.A. § 50–1017, and this being a later statute certainly takes precedence over the first statute and is the applicable statute, which makes our statute of limitations the 'injury' type and not the 'accident' type. Thus, when we read the facts of this case we find clearly that the trial judge has adopted this theory and applied the 'injury' type statute of limitations to this accident because the facts warrant his doing so.

"[1] The Workmen's Compensation Act contemplates liberality, not only in the admission of evidence, but also in the inferences to be drawn therefrom, and in borderline cases the court will endeavor to carry out the benevolent object of the Workmen's Compensation Act and resolve doubts in favor of the claimant. This employee reported his accident immediately, was sent to a doctor, and the doctor didn't think there was much wrong with him and told him to strap up his back and do a few things like that, but his back continued to hurt off and on. He worked right on for a couple of years and did not discover that he really had an injury to his back, which injury was permanent to his leg as heretofore indicated, until long after the year had elapsed from

the time that he had had the accident. There is no question of fraudulent concealment on the part of the employer, or the doctors or anything of the kind. The man just had what these doctors thought was a simple accident and he kept on working. They really didn't discover the injury until long after the time it had happened. "[2] As we see it, under the well reasoned cases of this country and of our State, those cited in the *Griffitts* case, supra, and others, this clearly warrants the trial court in holding that the statute here didn't begin to run until the employee discovered that this permanent injury was connected with the accident which had happened [prior] thereto." 217 Tenn. at 608, 609, 399 S.W.2d at 760.

See also Griffitts v. Humphrey, 199 Tenn. 528, 288 S.W.2d 1 (1955); Ogle v. Tennessee Eastman Corp., 185 Tenn. 527, 206 S.W.2d 909 (1947); and Patterson v. Bessemer Coal, etc. Co., 192 F. Supp. 805 (E.D.Tenn.1961).

Whatever may have been Tennessee's earlier views—see Graham v. J. W. Wells Brick Co., 150 Tenn. 660, 266 S.W. 770 (1924)—the law controlling this case is that announced in Imperial Shirt Corp. v. Jenkins, supra.

Cases relied upon by appellant may all be distinguished from the instant case. The claimant in Bradford v. Dixie Mercerizing Co., 199 Tenn. 170, 285 S.W.2d 136 (1955), received a complete diagnosis of his injury from his doctor four days after the accident. In Pittman v. City Stores, Inc., 204 Tenn. 650, 325 S. W.2d 249 (1958), claimant had continual headaches after an accident but neglected to consult a doctor for more than a year following the accident. Travelers Ins. Co. v. Jackson, 206 Tenn. 272, 332 S.W.2d 674 (1960) and Wilson v. Vestal Lumber, etc. Co., 214 Tenn. 157, 378 S. W.2d 780 (1963), admittedly are both similar to the instant case but in both it was found that the claimants knew more than one year before filing suit that the accident had partially disabled them.

These cases all agree that the time of "injury" may differ from the time of "accident". They merely hold that the time of "injury" preceded the time of filing suit by over a year. They all are distinguishable from the instant case (and from *Imperial Shirt*) in that the claimant here soon after the accident consulted a doctor who failed to advise him of the true nature and severity of the injury and by directing him to return to work made light of it. Thus, claimant did not know and could not be expected to know the true injury until he consulted another doctor two years later.

We agree with the District Judge's observation:

"It is true that he had back pains and backaches from time to time but there is a vast difference in living hopefully that he would get well and in having knowledge from an expert physician that he had a herniated disc."

The closest case in point and the most recent expression of the controlling law of Tennessee is Imperial Shirt, supra. It should be followed to toll the statute of limitations until 1966 when appellee first learned his true injury.

2) *Failure to Give Notice Within 30 Days of "Injury".*

Notice of injury must be given the claimant's employer pursuant to T.C.A. § 50–1001, as follows:

"50–1001. Notice of injury and claim for compensation. Every injured employee or his representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has not actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees nor to any compensation which may have accrued under the provisions of the Workmen's Compensation Law from the date of the accident to the giving of such notice, unless it can be shown that the employer had actual knowledge of the accident; and no compen-

sation shall be payable under the provisions of this law unless such written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented."

This statute, like the ones considered above, uses "accident" and "injury" interchangeably, and this shortcoming produces the controversy here. Appellee gave notice within 30 days of his 1964 "accident" but did not, until suit was started in March of 1967, give another notice when he learned in November, 1966, of his real "injury"—the ruptured disc. The examining doctor however, had in November, 1964, told the company of the ruptured disc.

The District Court found that the notice given in 1964 was sufficient and failure to again notify in 1966 did not bar appellee's claim. Appellant argues that there is a "basic contradiction" if the Court holds that notice relates back to 1964 but the statute of limitations does not begin to run until 1966. However, the District Court's finding is consistent with the *purpose* of the statute which is to advise the employer of the accident so that it might take steps to cure the injury and reduce its exposure to paying compensation benefits.

In Edwards v. Harvey, 194 Tenn. 603, 253 S.W.2d 766 (1952), claimant fell on a runway and orally reported the accident to his employer immediately. It was not until three months later that claimant gave written notice of his injury and filed suit. The Court held that the oral report complied with the statute.

*Edwards*, at 607, 253 S.W.2d at 768 quoted from Ogle v. Tennessee Eastman Corp., supra, 185 Tenn. at 531, 206 S.W.2d at 911:

"Further, the Act is not to be construed strictly as being in derogation of the common law, but liberally in favor of the claimant and in furtherance of the sound public policy that dictated the legislation  *  *  *."

We join the District Judge in his view that under Tennessee law and the special facts of this case, the statutory requirement of notice was satisfied.

3) Award of 85% of Permanent Partial Disability.

The District Judge determined and awarded compensation on the basis that the injured Ward was 85% permanently and partially disabled. Plaintiff was 49 years of age at the time of the hearing in 1967. He went through the sixth grade in school and had worked as a laborer in the coal mines for about 90% of his working years. Doctors testifying for the defendant stated that Ward's disability was approximately 15 to 20% "to the body as a whole." We read their entire testimony, however, as stating that such would be his disability after successful surgical repair of the ruptured disc. One of defendant-appellant's medical witnesses stated that without an operation,

"This man would be disabled from doing any heavy work, lifting, bending, stooping, twisting or anything of that kind."

and that,

"As a coal miner  *  *  *  he is completely disabled."

Such also was the purport of plaintiff's own testimony. He stated that if he got any contracting job, he would have to hire others to do all the physical work.[1]

Appellant argues that the undisputed testimony limits plaintiff's disability to 15–20%. We disagree. We are satisfied that the District Judge was justified in taking into account Ward's limited education and the testimony that without an operation he was substantially totally disabled. There was no evidence that the company ever offered to provide Ward with an operation. Nei-

---

1. This contracting work was really unimportant. There was evidence that in one season he had earned a total of $1,300 in such work.

ther did the doctors express an opinion as to the likely success of the surgery suggested. An employee is required to submit to a "reasonable" operation when offered by the employer. Sun Coal Co. v. Wilson, 147 Tenn. 118, 121, 245 S.W. 547 (1922). But where there is no evidence that the employer has demanded that the employee submit to an operation and no offer by the employer to pay for the operation, compensation shall not be reduced upon a mere showing that an operation might reduce the extent of disability. International Harvester Co. v. Scott, 163 Tenn. 516, 518–519, 43 S. W.2d 1065 (1931). See also Kingsport Silk Mills v. Cox, 161 Tenn. 470, 476, 33 S.W.2d 90 (1930). The extent of disability must be considered with claimant's occupation in mind. The Court in Greeneville Cabinet Co. v. Ramsey, 195 Tenn. 409, 414, 260 S.W.2d 157, 159 (1953), said,

> "The question is whether, in the open labor market, in his disabled condition, the employee, after the injury, is able to earn in spite of his disability, as much as he was able to earn before the injury."

Also, Tinker v. Bessemer Coal, etc. Co., 227 F.Supp. 710 (E.D.Tenn.1964) said that compensation was based on a loss of earning power rather than injury to the body.

In American Surety Co. v. Kizer, 212 Tenn. 328, 369 S.W.2d 736 (1963), a doctor testified that claimant, a schoolteacher who did bricklaying and other heavy labor in the summer, had a 20% permanent partial disability, basing this on his relatively light teaching duties, but also said that he could not do "real heavy labor" at all. The Court affirmed the trial judge's finding of an 80% disability as supported by material competent evidence.

In Armstrong v. Spears, 216 Tenn. 643, 393 S.W.2d 729 (1964), the relevant rule of Tennessee is given as follows:

> "The extent of disability in workmen's compensation cases is purely a question of fact, and the findings of the trial judge are conclusive on appeal, if supported by any substantial or material evidence. Fidelity & Casualty Company v. Treadwell, 212 Tenn. 1, 367 S.W.2d 470 (1963); Ward v. [North American] Rayon Corporation, 211 Tenn. 535, 366 S.W.2d 134 (1963)." 216 Tenn. at 652–653, 393 S.W.2d at 733.

Rule 52 F.R.Civ.P. forbids our setting aside District Court findings of fact unless they are clearly erroneous. The extent of plaintiff's compensable disability was a question of fact. We hold that the District Court's findings in this regard are not clearly erroneous and are supported by substantial evidence.

Affirmed.